Opinion issued June 7, 2007 

 










In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00586-CV






HONG KONG DEVELOPMENT, INC., HAI DU DUONG, and PHUONG
TRUONG TU, Appellants


V.


KIM LOAN NGUYEN D/B/A ALPHA BAKERY, Appellee






On Appeal from County Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 802024 (Consolidated with Cause No. 793,769)






OPINION ON REHEARING


 Appellee, Kim Loan Nguyen ("Nguyen"), has filed a motion for rehearing of the
Court's opinion dated November 9, 2006. Appellants, Hong Kong Development, Inc.
("HKDI"), Hai Du Duong ("Duong"), and Phuong Truong Tu ("Tu") (collectively,
"appellants") have responded to that motion. After due consideration, the Court grants
Nguyen's motion for rehearing, withdraws its judgment and opinion of November 9,
2006, and issues this opinion and judgment in their stead.

 Appellants appeal from a judgment, rendered upon a jury verdict, in favor of
Nguyen for $15,312.58 in actual damages against HKDI and Duong, jointly and
severally; $200,000 in punitive damages against each of HKDI and Duong; and
$79,900 in attorney's fees against all three appellants, jointly and severally. We
determine (1) over what appellate challenges we have jurisdiction; (2) whether the trial
court erred in consolidating an appeal pending before it in a forcible-detainer suit with
a suit in which Nguyen, invoking the court's original jurisdiction, had asserted various
tort and declaratory claims; (3) whether the error in consolidating the suits, if any, was
rendered moot; (4) whether the evidence is legally sufficient to support liability, actual
damages, and punitive damages against HKDI and Duong; (5) whether Tu had a duty
to indemnify Nguyen for her attorney's fees; and (6) whether the trial court erred in
rendering judgment for attorney's fees that Nguyen's expert did not segregate among
claims and defenses for which fees were recoverable and those for which they were
not. We reverse the judgment in part, affirm it in part, and remand the cause for
limited proceedings.

Background


 Tu and Nguyen were sisters-in-law. Tu, Nguyen, and Nguyen's sister entered
into a partnership to run a bakery and sandwich shop called Alpha Bakery. In
February of that same year, Tu and Nguyen leased space for their business in HKDI's
shopping mall. The lease that they executed with HKDI ("the lease agreement") listed
Tu and Nguyen as "Tenant" and contained the following provisions:

24. ASSIGNMENT AND SUBLETTING BY TENANT


 24.1 Tenant shall not assign this Lease, or any interest therein, . . .
without first obtaining the written consent of Landlord. . . . Any
assignment . . . without the prior written consent of Landlord shall be
void and shall, at the option of Landlord, terminate this Lease. This
Lease shall not, nor shall any interest therein, be assignable, as to the
interest of Tenant, by operation of law, without the prior written consent
of Landlord. However, it is further understood and agreed that Tenant
shall not sell, convey, or assign any interest in the corporation [sic]
without prior written approval from Landlord, and if Landlord does not
agree to the sale, conveyance or assignment of the corporation [sic],
Landlord may, at Landlord's option, terminate this Lease.


 . . . .

57. MISCELLANEOUS


 57.2 Acceptance of Rental by Landlord from Tenant or any assignee,
subtenant or other successor in interest of Tenant, or the payment or
tender of any Rental to Landlord, with or without notice, shall never be
construed as a waiver of any breach of any term, condition or covenant
of this Lease. The failure of Landlord to declare any Event of Default
upon the occurrence thereof, or any delay by Landlord in taking action
with respect thereto shall not waive such default, but Landlord shall have
the right to declare such default at any time and to take such action as
may be authorized hereunder to the extent herein provided.


Duong, HKDI's president and owner, signed the lease agreement on behalf of HKDI.

 Tu's and Nguyen's relationship soured a few years later, about the time that
Nguyen and her husband, Tu's brother, began divorce proceedings. The partners'
dispute led to a lawsuit ("the partnership suit"), and the partnership eventually went
into receivership. The jury in the partnership suit awarded Nguyen and her sister, also
a partner, 70% of the partnership; awarded Tu 30% of the partnership; and awarded
actual damages to Nguyen and attorney's fees to Nguyen and her sister. (1) In a separate
receivership sale of Alpha Bakery, Nguyen purchased the business. Final paperwork
for the sale was drawn up, including a contract assigning Tu's lease interest to Nguyen
("the lease assignment"), as well as a contract assigning Tu's partnership interest to
Nguyen ("the partnership assignment"). No one obtained HKDI's consent to the lease
assignment, despite the lease agreement's requirement that HKDI's written consent
be obtained as a precondition to any assignment of the leasehold interest. 
Nonetheless, Nguyen and Tu signed the documents, including the lease assignment.

 In a nutshell, Nguyen's position in the current suit was that she and Tu had
signed the lease assignment without HKDI's written consent under duress because the
trial court in the partnership suit had ordered them to sign it under threat of contempt. 
She also alleged that Tu's counsel in the partnership suit, who had represented HKDI
in other matters, had implied in the partnership suit that he was representing both Tu
and HKDI and that HKDI would not object to the assignment. Nguyen also took the
position in the current lawsuit that Tu, HKDI, and Duong had conspired, for various
reasons, to have the parties execute the lease assignment without first obtaining
HKDI's written consent so that Nguyen could be declared in default, HKDI could
evict her, and Tu could open a competing restaurant in the same mall. HKDI, Duong,
and Tu disputed the validity of Nguyen's theories.

 In May 2003, HKDI notified Nguyen and Tu that they were in default under the
lease because HKDI's consent had not been obtained to the lease assignment and
instructed them to vacate the premises. Later that month, Nguyen sued HKDI, Duong,
and Tu in Harris County Civil Court at Law No. 3 ("the tort suit"). (2) Nguyen (1)
sought a declaration that the lease assignment from Tu to Nguyen was not a breach of
the lease agreement; (2) asserted a cause of action for breach of fiduciary duty against
Tu; (3) asserted a cause of action for conspiracy against all appellants, alleging that
they had conspired in order for Tu to run Nguyen's restaurant out of business so that
Tu could operate an allegedly competing restaurant within Hong Kong Market; and
(4) sought actual damages of "less than $100,000," exemplary damages, attorney's
fees, and injunctive relief. Two months later, Nguyen filed a first supplemental
petition in the tort suit, seeking a declaration--as an apparent alternative to a
declaration that the lease assignment had not breached the lease agreement--that the
lease assignment was void for having been executed under the "extreme duress" of the
threat of contempt in the partnership suit. All appellants answered, and HKDI and
Duong asserted a counter-claim against Nguyen for sanctions for the filing of a
frivolous lawsuit.

 In July 2003, HKDI filed suit, against both Tu and Nguyen, for forcible detainer
in a Harris County justice of the peace court, seeking possession of the leasehold
property ("the forcible-detainer suit"). See Tex. Prop. Code Ann. § 24.002 (Vernon
2000). Although the record does not show how the justice court disposed of the
forcible-detainer suit, HKDI asserts, without dispute, that it confessed judgment and
then immediately appealed to County Civil Court at Law No. 1. (3) See Tex. R. App. P.
38.1(f) ("In a civil case, the court will accept as true the facts stated [in the appellant's
brief] unless another party contradicts them."); Mullins v. Coussons, 745 S.W.2d 50,
50 (Tex. App.--Houston [14th Dist.] 1987, no writ) (holding that rendition of agreed
judgment in justice court in forcible-detainer suit does not deprive county court of
jurisdiction to hear case, when appealed, in trial de novo). Both Tu and Nguyen
answered in the county civil court at law in the forcible-detainer suit. On October 2,
2003, Nguyen asserted counter-claims in the forcible-detainer suit against HKDI,
cross-claims against Tu, and "cross-claims"--which were actually third-party
claims--against Duong, who had theretofore not been a party in the forcible-detainer
suit. (4) Nguyen alleged (1) that Tu and Duong had tortiously interfered with her
contractual relations; (2) that Tu had breached her fiduciary duty to Nguyen; (3) that
all appellants had unfairly competed with her; and (4) that all appellants had conspired
to evict her. On her counter-, cross-, and third-party claims in the forcible-detainer
suit, Nguyen sought actual damages of "less than $100,000," exemplary damages, and
attorney's fees. HKDI answered Nguyen's counter-claims against it, but Duong did
not. Although the clerk's record does not show this, HKDI and Duong assert on
appeal, without contradiction by Nguyen, that Nguyen never served Duong on her
third-party claim. See Tex. R. App. P. 38.1(f).

 On October 10 and 15, 2003, respectively, Tu and HKDI moved in the forcible-detainer suit to strike or to sever Nguyen's counter-claims, cross-claims, and third-party claims, arguing that the county civil court at law had no subject-matter
jurisdiction to consider these matters in a forcible-detainer suit. On October 16, 2003,
Nguyen moved in the forcible-detainer suit to consolidate the tort suit and the forcible-detainer suit, which motion HKDI opposed in writing, while also reurging its earlier-filed motion to strike or to sever.

 In the meantime, on October 16, 2003 in the forcible-detainer suit, Nguyen filed
her first amended counter-claim, cross-claim, and third-party claim, this time omitting
Duong as a named party. This amendment occurred before the court in the forcible-detainer suit had ruled on Nguyen's motion to consolidate. 

 On October 23, 2003, the trial court in the forcible-detainer suit signed an order
consolidating the two lawsuits and ordering the tort suit transferred to County Civil
Court at Law No. 1, the court to which the forcible-detainer suit had been appealed
("the consolidated suit"). From that point forward, Nguyen supplemented her petition
once on the day that trial began, and she was twice granted leave, over HKDI's and
Duong's various objections, to conform the pleadings to the evidence. One of these
post-trial amendments re-added Duong as a third-party defendant to Nguyen's third-party claims that had been asserted in the forcible-detainer suit before consolidation. 
After consolidation, Tu also asserted a counter-claim and a cross-claim against
Nguyen for indemnity based on a provision in the lease assignment.

 By virtue of her pleadings filed in the separate suits before consolidation, and
by virtue of the pre-trial and post-trial amendments that the trial court allowed in the
consolidated suit, Nguyen pleaded the following claims, requests for relief, and
defenses in the consolidated suit: (5)

 a declaration that the lease assignment from Tu to Nguyen was not
a breach of the lease agreement with HKDI;


 a declaration--as an apparent alternative to a declaration that the
lease assignment had not breached the lease agreement--that the
lease assignment was void for having been executed under the
"extreme duress" of the threat of contempt in the partnership suit;


 breach of fiduciary duty by Tu;


 conspiracy against all appellants, asserting that they had conspired
to evict her;


 tortious interference with contractual relations by Tu and Duong;


 unfair competition against all appellants;


 indemnity against Tu, under theories that Tu had breached a
contract and that Tu owed indemnity for attorney's fees under the
documents signed in the partnership suit; and


 waiver and estoppel, as defenses to HKDI's position that it was
entitled to possession because Nguyen had breached the lease
agreement with HKDI by virtue of the lease assignment.

 Not all of the claims went to the jury, however. The pertinent jury questions
and answers were as follows:


#
Question
Answer
1
Whether any of the following excused the
lease assignment, executed without HKDI's
prior written consent, from Tu to Nguyen:

a. duress

b. waiver

c. estoppel



a. Yes

b. Yes

c. Yes
2
Whether HKDI breached the lease agreement
No
3
--

--

4
Whether Tu breached her fiduciary duty to
Nguyen
Yes
5
What the damages that arose from Tu's breach
of fiduciary duty were
$0.00
6
Whether Duong wrongfully interfered with
Nguyen's contractual relations
Yes
7
What the damages that arose from Duong's
tortious interference were
Nguyen's costs
to defend her
right to the
leased premises:
$49,266.66


Nguyen's past
mental anguish:
$15,000.00
8
Whether Duong was part of a conspiracy that
damaged Nguyen (not predicated on any
question)
Yes
9
Whether HKDI was part of a conspiracy that
damaged Nguyen (not predicated on any
question)
Yes
10
Whether Tu was part of a conspiracy that
damaged Nguyen (not predicated on any
question)
No
11
Whether clear and convincing evidence
showed that Duong's malice harmed Nguyen
(predicated on question 8)
Yes
12
--

--

13
What Nguyen's attorney's fees were
(predicated on question 11)
for preparation
and trial:
$73,900.00


for post-trial
motions:
$6,000.00


for appeals to
higher courts:
$0.00
14
--

--



In the punitive-damages phase of trial, the jury awarded Nguyen $1 million against
Duong and the same amount against HKDI. 

 Nguyen moved for judgment on the verdict; HKDI and Duong filed objections
to Nguyen's motion for entry of judgment; and HKDI and Duong filed a competing
motion for entry of judgment, requesting that Nguyen take nothing on her claims and
that HKDI be awarded possession. (6) Nguyen's motion for entry of judgment was
implicitly granted, and HKDI and Duong's objections and motion for judgment were
implicitly overruled, by entry of judgment that

 declared that the lease assignment between Tu and Nguyen did not
breach the lease agreement with HKDI;


 declared that Tu had to indemnify Nguyen for Nguyen's attorney's
fees; 


 awarded Nguyen possession of the leased premises;


 awarded Nguyen $15,312.58 in actual damages and interest
against HKDI and Duong, jointly and severally; (7)


 awarded Nguyen $79,900 in attorney's fees against all appellants,
jointly and severally;


 reduced the exemplary damages and awarded $200,000 in
exemplary damages against each of HKDI and Duong; and


 rendered a take-nothing judgment on all appellants' claims against
Nguyen.


See Tex. R. App. P. 33.1(a)(2)(A) (allowing error to be preserved by express or implied
ruling on motion); First Nat'l Indem. Co. v. First Bank & Trust of Groves, Tex., 753
S.W.2d 405, 407 (Tex. App.--Beaumont 1988, no writ) (holding that appellant failed
to preserve challenge to rendition of unpleaded interest rate when it failed to except
to opposing party's motion for entry of judgment requesting unpleaded interest rate
or to move to limit judgment to pleaded rate); cf. Lenz v. Lenz, 79 S.W.3d 10, 13 (Tex.
2002) (holding that appellant preserved complaint raised in pre-judgment JNOV
because trial court implicitly ruled on JNOV motion by virtue of substance of its
judgment that was later rendered); Second Injury Fund v. Tomon, 853 S.W.2d 654,
659 (Tex. App.--Houston [14th Dist.] 1993, writ denied) (noting that finding on
matter omitted from jury charge would not be deemed in plaintiff's favor when
defendant objected at first opportunity, which was at hearing on plaintiff's motion to
enter judgment). After judgment, Tu moved for JNOV, as did HKDI and Duong. 
HKDI and Duong's post-judgment JNOV motion was heard by the trial court, but no
order disposing of it appears in the record. (8)

HKDI and Duong's Appeal


 As preliminary matters on appeal, HKDI and Duong raise various challenges
that they assert concern jurisdictional matters relating to allegations in the forcible-detainer suit that were carried forward after consolidation. Alternatively, they raise
other challenges that they assert concern non-jurisdictional matters relating to
allegations in the tort suit that were carried forward or added after consolidation.

A. Our Appellate Jurisdiction to Consider HKDI and Duong's Various
Challenges

 Determining which of HKDI and Duong's various appellate challenges we may
consider is complicated by the facts that the two suits were consolidated; that in one
suit, the county court exercised appellate jurisdiction; that in the other suit, the county
court exercised original jurisdiction; that in both suits, the parties sought, among other
things, a determination of the right to possession; that the suits were tried together
after consolidation; and that one judgment was rendered in the consolidated cause and
included, among other determinations, a determination of the right to possession. We
first examine our appellate jurisdiction over judgments in suits in which the county
court exercises appellate jurisdiction (specifically, forcible-detainer suits), our
appellate jurisdiction over judgments in suits in which the county court exercises
original jurisdiction, and the effect on our appellate jurisdiction of the consolidation
here.

 1. Our Jurisdiction in Appeals from a Forcible-Detainer Judgment in
County Court

 On appeal from a forcible-detainer judgment, we have no jurisdiction to
consider the issue of possession if, as is the case here, the disputed premises were used
for commercial purposes. Tex. Prop. Code Ann. § 24.007 (Vernon 2000) ("A final
judgment of a county court in an eviction suit may not be appealed on the issue of
possession unless the premises in question are being used for residential purposes
only."); Carlson's Hill Country Beverage, L.C. v. Westinghouse Rd. Joint Venture,
957 S.W.2d 951, 952-53 (Tex. App.--Austin 1997, no pet.). The prohibition against
considering possession includes consideration of any finding "essential to the issue
of," (9) "dependent on," (10) or "primarily concerned with the issue of" (11) possession. In
sum, had the cases not been consolidated, we would have been able to review only
limited issues in an appeal of the judgment rendered in the forcible-detainer suit.

 2. Our Jurisdiction in Appeals from Other Judgments in County Court


 In contrast, our appellate jurisdiction is generally not so limited in an appeal of
a county court judgment outside the forcible-detainer context. See Tex. Gov't Code
Ann. § 22.220(a) (Vernon 2004) ("Each court of appeals has appellate jurisdiction of
all civil cases within its district of which the district courts or county courts have
jurisdiction when the amount in controversy or the judgment rendered exceeds $100,
exclusive of interest and costs."). Therefore, had the cases not been consolidated, we
would have had plenary appellate jurisdiction to review virtually any issue asserted
to challenge a judgment rendered in the tort suit.


 3. The Effect of Consolidation on Our Appellate Jurisdiction


 Our jurisdiction to consider HKDI and Duong's various appellate challenges is
affected by the consolidation of the forcible-detainer and tort suits. Two types of
consolidation exist: true consolidation and consolidation for trial. See 3 Roy W.
McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 17:25, at 775 
(2d ed. 2000) [hereinafter "McDonald & Carlson"]; see also 7 William V.
Dorsaneo III, Texas Litigation Guide § 112.01[1][a] (1999) [hereinafter
"Dorsaneo"]. True consolidation, as occurred here, involves merging separate suits
into a single proceeding under one docket number. McDonald & Carlson, supra,
at 775. "'When actions are properly consolidated they become merged and are
thereafter treated as one suit. . . .'" Perry v. Del Rio, 53 S.W.3d 818, 825 n.6 (Tex.
App.--Austin 2001) (quoting 1 Tex. Jur. 3d Actions § 77 (1993)), pet. dism'd, 66
S.W.3d 239 (Tex. 2001); see Rust v. Tex. & Pac. Ry. Co., 107 Tex. 385, 387, 180 S.W.
95, 95 (1915) ("In the present case, the order of consolidation having been properly
made, there remained no separable cause of action. It became but one suit . . . ."). 
Therefore, when a court orders true consolidation of two or more cases, the actions are
merged and thereafter proceed as a single action. See Rust, 107 Tex. at 387, 180 S.W.
at 95; Perry, 53 S.W.3d at 825 n.6; McDonald & Carlson, supra, at 775. Here, a
single judgment was rendered after consolidation, and it is that judgment that HKDI
and Duong appeal. (12)

 We hold as follows. In this appeal from the single judgment in the consolidated
suit, we have the limited appellate jurisdiction provided by Texas Property Code
section 24.007 to consider challenges to matters raised solely by the forcible-detainer
pleadings. See Tex. Prop. Code Ann. § 24.007. In contrast, we have plenary
appellate jurisdiction to consider challenges to matters raised by the tort-suit
pleadings, regardless of whether those matters were also raised by the forcible-detainer
pleadings. For each of HKDI and Duong's challenges discussed below, we state
separately whether we have jurisdiction to consider them.

B. The Counter-Claim and Third-Party Claim Asserted in the Forcible-Detainer Suit Against HKDI and Duong Before Consolidation


 In issue one, HKDI and Duong argue that the trial court lacked subject-matter
jurisdiction to adjudicate Nguyen's counter-claims against HKDI and her third-party
claims against Duong that she had asserted in the forcible-detainer suit before
consolidation. Specifically, they argue that the county civil court at law, sitting as an
appellate court in the forcible-detainer suit, lacked subject-matter jurisdiction to
consider the counter-claims and third-party claims because those claims (1) exceeded
the justice court's jurisdiction, (2) fell outside the scope of claims allowed in a
forcible-detainer suit, and (3) were impermissibly raised for the first time on appeal
to the county civil court at law. Additionally, HKDI and Duong argue that the trial
court lacked subject-matter jurisdiction to award actual damages over the justice
court's $5,000 damages cap, and to award exemplary damages at all, in the forcible-detainer suit. For these reasons, HKDI and Duong argue that the trial court erred in
not severing or striking the complained-of counter-claims and third-party claims from
the forcible-detainer suit before consolidation. We have jurisdiction to consider these 
challenges because, although they concern matters in the pre-consolidation forcible-detainer suit, they relate to the county civil court at law's subject-matter jurisdiction
and thus do not concern the issue of possession. See Gibson v. Dynegy Midstream
Servs., L.P., 138 S.W.3d 518, 521 (Tex. App.--Fort Worth 2004, no pet.); Rice v.
Pinney, 51 S.W.3d 705, 708 (Tex. App.--Dallas 2001, no pet.) ("Section 24.007 does
not preclude appellate review of a county court at law's subject matter jurisdiction"
because such challenges concern county court's "authority to decide this case
regardless of how it resolved the possession issue.").

 1. What May Be Determined in a Forcible-Detainer Suit

 "The procedure to determine the right to immediate possession of real property,
if there was no unlawful entry, is the action of forcible detainer." Rice, 51 S.W.3d at
709; see Tex. Prop. Code Ann. § 24.002 (defining forcible detainer). "To prevail in
a forcible detainer action, a plaintiff is not required to prove title but is only required
to show sufficient evidence of ownership to demonstrate a superior right to immediate
possession." Ward v. Malone, 115 S.W.3d 267, 270 (Tex. App.--Corpus Christi
2003, pet. denied). For these reasons, "a judgment of possession in a forcible detainer
action is a determination only of the right to immediate possession and does not
determine the ultimate rights of the parties to any other issue in controversy relating
to the realty in question." Lopez v. Sulak, 76 S.W.3d 597, 605 (Tex. App.--Corpus
Christi 2002, no pet.); see Martinez v. Beasley, 572 S.W.2d 83, 85 (Tex. Civ.
App.--Corpus Christi 1978, no writ). Prior to consolidation, the forcible-detainer suit
was purely one for forcible detainer, that is, to determine the right to immediate
possession. 

 Justice courts have original jurisdiction over forcible-detainer suits. See Tex.
Prop. Code Ann. § 24.004 (Vernon 2000); see also Tex. Gov't Code Ann.
§ 27.031(a)(2) (Vernon 2004). Any party dissatisfied with a justice-court judgment
in such a suit may appeal to the county court, (13) in which trial is de novo. See Tex. R.
Civ. P. 749. On appeal in a forcible-detainer suit, the county court exercises appellate,
not original, jurisdiction. The county court's appellate jurisdiction is generally
confined to the limits of the justice court (with the exception of the specific damages
noted below), and the county court has no jurisdiction over a forcible-detainer appeal
unless the justice court did. Ward, 115 S.W.3d at 269.

 "An action of forcible entry and detainer is a special proceeding and as such is
governed by the special statutes and rules applicable thereto." Haginas, 163 Tex. 274,
277, 354 S.W.2d 368, 371 (1962); accord Rice, 51 S.W.3d at 709. "Forcible-entry-and-detainer actions provide a speedy, summary, and inexpensive determination of the
right to immediate possession of real property." Volume Millwork, Inc., 2006 WL
3628830, at *3; Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P., 97 S.W.3d 731, 737
(Tex. App.--Dallas 2003, no pet.); see McGlothlin v. Kliebert, 672 S.W.2d 231, 232
(Tex. 1984). The Texas Rules of Civil Procedure ensure the speedy, summary, and
inexpensive nature of forcible-detainer suits. See Meridien Hotels, Inc., 97 S.W.3d
at 737; see also Tex. R. Civ. P. 739, 740, 745, 746, 748, 749 (all requiring expedited
or streamlined procedures in forcible-entry and forcible-detainer suits).

 Because of this purpose, the sole issue to be determined in a forcible-detainer
or forcible-entry suit is the entitlement to actual and immediate possession. See Tex.
R. Civ. P. 746; Haginas, 354 S.W.2d at 371. Nonetheless, the rules do vest the justice
or county courts in such suits with jurisdiction over a few other limited matters. For
example, a suit for rent may be joined with an action for forcible entry or detainer, as
long as the claim for rent falls within the justice court's jurisdiction. Tex. R. Civ. P.
738; Haginas, 354 S.W.2d at 371. Additionally, in trial de novo on appeal to the
county court, "the appellant or appellee shall be permitted to plead, prove and recover
his damages, if any, suffered for withholding or defending possession of the premises
during the pendency of the appeal," although only the party prevailing in the county
court may recover these damages. Tex. R. Civ. P. 752. Such damages include, but are
not limited to, loss of rents during the appeal's pendency and reasonable attorney's
fees in the justice and county courts, and the prevailing party in the county court may
also recover costs. Id. The damages that may be sought under rule 752 are only those
"suffered as a direct result of withholding or defending possession." Hanks v. Lake
Towne Apartments, 812 S.W.2d 625, 627 (Tex. App.--Dallas 1991, writ denied). 
Under rule 752, a party may recover the specified damages "regardless of the amount
so long as [the prevailing party] can prove such damages." Haginas, 354 S.W.2d at
372. In other words, in a trial de novo in a forcible-detainer proceeding on appeal in
county court, a prevailing party may recover the damages allowed by rule 752 even
if the amount of those damages exceeds the amount-in-controversy limit of the county
court's original jurisdiction. Id.

 The county and justice courts lack subject-matter jurisdiction in a forcible-detainer suit to adjudicate matters other than those listed in the immediately preceding
paragraphs. See, e.g., Krull v. Somoza, 879 S.W.2d 320, 322 (Tex. App.--Houston
[14th Dist.] 1994, writ denied) (holding that damages claims related to maintaining or
obtaining possession of disputed premises may be joined with forcible-detainer suit
and litigated in county court, but that damages for other causes of action cannot be
maintained in same suit); Hanks, 812 S.W.2d at 627 (holding that county court lacked
subject-matter jurisdiction over tenant's counter-claims for wrongful retention of
rental security deposit that had been asserted on appeal in forcible-detainer suit);
Rushing v. Smith, 630 S.W.2d 498, 499-500 (Tex. App.--Amarillo 1982, no writ)
(holding that county court lacked subject-matter jurisdiction over cross-claims for
damages to recover for certain farming work that had been done, which damages were
unrelated to expenses in defending possession, on appeal in forcible-detainer suit). (14) 
This result obtains because "[t]he jurisdiction of the County Court is of a dual nature[:]
one original and the other appellate from the Justice Court." Neal v. Beck Funeral
Home, 131 S.W.2d 778, 779 (Tex. Civ. App.--Fort Worth 1939, writ dism'd) (holding
same in appeal to county court from justice court in suit other than one for forcible
detainer). When a county court acquires only appellate jurisdiction in a given suit, it
may not, absent authorization by statute or rule, determine any matter acquired by
virtue of its original jurisdiction in that same suit. See id. at 780.

 2. Discussion

 Prior to consolidation, Nguyen alleged against HKDI and Duong in the forcible-detainer suit (by counter-claim or third-party claim asserted for the first time on appeal
to the county court at law) that (1) Duong had tortiously interfered with her contractual
relations; (2) all appellants had unfairly competed with her; and (3) all appellants had
conspired to evict her. She also sought actual damages of "less than $100,000,"
exemplary damages, and attorney's fees.


 Under the law set out above, the county court at law, before consolidation, had
no subject-matter jurisdiction over these claims because it was exercising its appellate
jurisdiction over the forcible-detainer suit appealed from the justice court. None of
the matters that Nguyen pleaded concerned the right to immediate possession. See
Tex. R. Civ. P. 746 (providing that right to possession is sole issue determined in
forcible-detainer or forcible-entry suit). Neither were they an attempt to collect rent. 
See Tex. R. Civ. P. 738 (allowing suit for rent to be adjudicated with forcible-detainer
suit, provided that rent sought is within justice court's jurisdiction). Additionally, as
she had pleaded her tort claims, Nguyen did not expressly seek, or limit her damages
to, damages "suffered for withholding or defending possession of the premises during
the pendency of the appeal." Tex. R. Civ. P. 752; see Krull, 879 S.W.2d at 322
(holding that, under rule 752, damages unrelated to maintaining or obtaining
possession of disputed premises may not be joined with forcible-detainer suit in
county court). Because she did not seek rule-752 damages--which pleading would
have allowed her to seek more than the $5,000 amount-in-controversy limit applicable
to many appeals from justice court (15)--the fact that Nguyen sought up to $100,000 also
took her tort claims outside of the county court's appellate jurisdiction. Compare Tex.
Gov't Code Ann. § 27.031(a)(1) (setting amount-in-controversy civil jurisdiction of
justice courts at $5,000 maximum, excluding interest) with id. § 25.0003(c)(1)
(Vernon 2004) (setting amount-in-controversy civil jurisdiction of statutory county
courts at $100,000 maximum, excluding interest, statutory or punitive damages or
penalties, and attorney's fees and costs). Finally, exemplary damages do not fall
within those damages authorized in forcible-detainer suits. See Tex. R. Civ. P. 746,
752. Simply put, there is no way to construe Nguyen's counter-claims and third-party
claims that she asserted in the forcible-detainer suit against HKDI and Duong before
consolidation so that the county court could have exercised jurisdiction over them. (16)

 When a court lacks subject-matter jurisdiction over some claims, but not others,
it should sever or dismiss those claims over which jurisdiction is lacking. See Thomas
v. Long, 207 S.W.3d 334, 338 (Tex. 2006) ("[I]t is proper for a trial court to dismiss
claims over which it does not have subject matter jurisdiction but retain claims in the
same case over which it has jurisdiction.") (citing Am. Motorists Ins. Co. v. Fodge, 63
S.W.3d 801, 805 (Tex. 2001)); Fandey v. Lee, 880 S.W.2d 164, 169 (Tex. App.--El
Paso 1994, writ denied) (indicating in dictum that counter-claims for fraud and to quiet
title were properly severed from forcible-detainer suit). HKDI and Duong moved,
before consolidation, to strike or to sever all of Nguyen's claims in the forcible-detainer suit. Although severance rulings are reviewable for abuse of discretion, (17) it
is an inherent abuse of discretion to misapply the law--such as, for example, when a
court exercises jurisdiction over a matter over which it has none. See Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992); see also Tex. Natural Res. Conservation
Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002) (providing that question of
whether court has subject-matter jurisdiction is question of law). Additionally, to the
extent that the court's rulings (here, the motion to strike or to sever) allowed the
exercise of jurisdiction over matters in the forcible-detainer appeal over which the
court lacked jurisdiction, we review those rulings de novo. See Tex. Dep't of Parks
& Wildlife v. Miranda, 133 S.W.3d 217, 228 (Tex. 2004) ( "Appellate courts
reviewing a challenge to a trial court's subject matter jurisdiction review the trial
court's ruling de novo.").

 3. Mootness

 Nonetheless, the jurisdictional error committed before consolidation was
rendered moot by the consolidation. 

 "An eviction suit does not bar a suit for trespass, damages, waste, rent, or
mesne profits." Tex. Prop. Code Ann. § 24.008 (Vernon 2000). Additionally, "[a]
judgment or a determination of fact or law in a proceeding in . . . justice of the peace
court is not res judicata and does not constitute a basis for estoppel by judgment in a
proceeding in a . . . statutory county court." Tex. Civ. Prac. & Rem. Code Ann.
§ 31.005 (Vernon 1997). That is, a forcible-detainer action is cumulative of, not
exclusive of, other remedies that a party may have. McGlothlin, 672 S.W.2d at 233;
Dormady v. Dinero Land & Cattle Co., L.C., 61 S.W.3d 555, 558 (Tex. App.--San
Antonio 2001, pet. dism'd w.o.j.); Rice, 51 S.W.3d at 709. "If all matters between the
parties cannot be adjudicated in the justice court in which the forcible entry and
detainer proceedings are pending due to the justice court's limited subject matter
jurisdiction, then either party may maintain an action in a court of competent
jurisdiction for proper relief." McGlothlin, 672 S.W.2d at 233; accord Rushing, 630
S.W.2d at 500. 

 For these reasons, a forcible-detainer suit in justice court may run concurrently
with another action in another court--even if the other action adjudicates matters that
could result in a different determination of possession from that rendered in the
forcible-detainer suit. See Villalon v. Bank One, 176 S.W.3d 66, 70-71 (Tex.
App.--Houston [1st Dist.] 2004, pet. denied) (indicating that suit to determine
wrongful foreclosure, which concerned title, could have been pursued in separate
proceeding concurrently with forcible-detainer suit); see also Meridien Hotels, Inc.,
97 S.W.3d at 738 (holding that trial court properly issued writ of mandamus to compel
justice court to vacate order abating forcible-detainer suit until district court--which
had issued interlocutory order declaring that tenants had defaulted under lease, that
landlord had right to terminate lease, and that tenants no longer had right to
possession--had rendered final judgment). Matters relating to possession may overlap
in the two proceedings because "a judgment of possession in a forcible detainer action
is a determination only of the right to immediate possession and does not determine
the ultimate rights of the parties to any other issue in controversy relating to the realty
in question." Lopez, 76 S.W.3d at 605 (emphasis added); see, e.g., Martinez, 572
S.W.2d at 85. 

 Before consolidation, Nguyen alleged causes of action against HKDI for
conspiracy to evict her and sought up to $100,000 actual damages and exemplary
damages in the tort suit. This is the same claim that Nguyen alleged, and the same
damages that she sought, against HKDI and Duong in the forcible-detainer suit. 
Accordingly, even though the county civil court at law lacked appellate jurisdiction
in the forcible-detainer suit before consolidation to consider Nguyen's counter-claim
against HKDI for conspiracy, her third-party claim against Duong for conspiracy, and
her request for many of the damages that she sought against both HKDI and Duong,
the trial court had subject-matter jurisdiction to consider those claims and types of
damages in the tort suit. See Tex. Gov't Code Ann. § 25.0003(c)(1) (setting amount-in-controversy civil jurisdiction of statutory county courts at $100,000 maximum,
excluding interest, statutory or punitive damages or penalties, and attorney's fees and
costs); see also McGlothlin, 672 S.W.2d at 233 (indicating that party to forcible-detainer suit may concurrently pursue, in different proceeding, suit for damages); cf.
Johnson v. Highland Hills Dr. Apartments, 552 S.W.2d 493, 495-96 (Tex. Civ. App.
1977) (holding that holding that forcible-entry judgment was not res judicata in
separate suit between same parties seeking damages for wrongful eviction and for
breach of duty to provide mail facilities), writ ref'd n.r.e., 568 S.W.2d 661 (Tex.
1978). Accordingly, although the county civil court at law did not have jurisdiction
over this claim and certain of these damages to the extent that the court exercised its
appellate jurisdiction in the consolidated suit, it had jurisdiction over these matters to
the extent that it exercised its original jurisdiction, and the post-consolidation
pleadings supported that exercise of original jurisdiction.

 The same result obtains with respect to Nguyen's claim for tortious interference
against Duong once the suits had been consolidated. (18) Although the county civil court
at law did not have jurisdiction over this claim to the extent that the court exercised
its appellate jurisdiction, it had jurisdiction over the claim to the extent that it
exercised its original jurisdiction, and the post-consolidation pleadings supported the
exercise of that jurisdiction (putting aside for the moment whether the court should
have allowed Nguyen to add this claim belatedly). See McGlothlin, 672 S.W.2d at
233; Johnson, 552 S.W.2d at 495-96.

 4. Conclusion

 We hold that the trial court's error in failing to sever Nguyen's counter-claims
and third-party claims against HKDI and Duong in the forcible-detainer suit before
consolidation was rendered moot by the fact that the same court could consider these
claims and damages after consolidation by exercise of its original jurisdiction that
arose from the tort-suit-related pleadings.

 We overrule this challenge under issue one.

C. Consolidation

 Also under issue one, HKDI and Duong assert that the trial court committed
fundamental error by consolidating the forcible-detainer suit, in which the county
court lacked appellate jurisdiction to consider the counter-claims and third-party
claims against them, with the tort suit, in which the county court had original
jurisdiction to consider them. HKDI and Duong argue that the trial court's
consolidating these suits allowed Nguyen to assert the very claims and to recover the
very damages that would not have been maintainable or recoverable in the forcible-detainer suit had it not been consolidated with the tort suit. They argue that the county
civil court at law had the power to exercise either appellate or original jurisdiction, but
not both in the same suit. Put another way, they argue that the trial court could not do
through the back door what it could not do through the front.

 1. Whether Consolidation is Jurisdictional

 Consolidation is a procedural device that a court may utilize at its discretion
upon motion, upon stipulation, or sua sponte. See McDonald & Carlson, supra,
at 777. Texas Rule of Civil Procedure 174(a) provides:

 When actions involving a common question of law or fact are pending
before the court, it may order a joint hearing or trial of any or all the
matters in issue in the actions; it may order all the actions consolidated;
and it may make such orders concerning proceedings therein as may tend
to avoid unnecessary costs or delay.


Tex. R. Civ. P. 174(a). Consolidation furthers judicial economy by combining actions
that involve a common question of law or fact to mitigate the expense associated with
litigation, to eliminate the proliferation of suits, and to expedite the judicial process. 
See McDonald & Carlson, supra, at 776; see also Owens-Corning Fiberglas Corp.
v. Martin, 942 S.W.2d 712, 716 (Tex. App.--Dallas 1997, no writ) ("In deciding
whether to consolidate, the trial court must balance the judicial economy and
convenience that may be gained by the consolidation against the risk of an unfair
outcome because of prejudice or jury confusion."). "The trial court may consolidate
actions that relate to substantially the same transaction, occurrence, subject matter, or
question." Martin, 942 S.W.2d at 716. Rule 174(a) "does not require that all of the
questions of law or fact be common to each of the cases to be consolidated. All that
is required is that the two actions involve one or more common questions of
significance. This is especially true if the parties are identical." 7 William V.
Dorsaneo, supra, at § 112.02[1]. However, if the parties and issues differ, then
consolidation is improper. McDonald & Carlson, supra, 783-84. We review a
consolidation order for abuse of discretion. Allison v. Ark. La. Gas Co., 624 S.W.2d
566, 568 (Tex. 1981).

 HKDI and Duong reason as follows. By virtue of the consolidation, the two
lawsuits in this case merged and proceeded thereafter as a single action. See Perry,
53 S.W.3d at 825 n.6; Rust, 107 Tex. at 387, 180 S.W. at 95; McDonald & Carlson,
supra, at 775. Accordingly, Nguyen's claims against HKDI and Duong--over some
of which the court in the forcible-detainer suit did not have jurisdiction when they
were asserted there as cross-claims and third-party claims--were subsequently
allowed to be raised in the consolidated suit by virtue of the consolidation. 
Consolidation in these circumstances thus accomplished what the same court, when
presiding over the forcible-detainer appeal, lacked subject-matter jurisdiction to do. 
Thus, they conclude that the trial court lacked subject-matter jurisdiction to
consolidate the suits.

 We disagree. An order is void, among other things, if the trial court lacks
subject-matter jurisdiction to render it. See Browning v. Placke, 698 S.W.2d 362, 363
(Tex. 1985) (indicating that judgment is void when, among other things, it is apparent
that court rendering judgment "had . . . no jurisdiction of the subject matter"); In re
Dickason, 987 S.W.2d 570, 571 (Tex. 1998) (holding that order rendered after trial
court's plenary jurisdiction had expired was void); cf. In re Cornyn, 27 S.W.3d 327,
332 (Tex. App.--Houston [1st Dist.] 2000, orig. proceeding) ("Mandamus lies over
an interlocutory or temporary order that the court had no jurisdiction to make."). It is
undisputed that each of the two county civil courts at law involved here sat in the same
county; that each had subject-matter jurisdiction over forcible-detainer appeals
generally; and that each also had subject-matter jurisdiction over the general
categories of damage claims and declaratory relief that Nguyen sought (putting aside
for a moment HKDI and Duong's challenges to the aggregate amounts in controversy). 
See Tex. Gov't Code Ann. §§ 25.0003(a), (c)(1), 25.1031(a), 25.1032(a) (Vernon
2004). 

 When the transferee county court has subject-matter jurisdiction over the
matters sought to be transferred to it in a consolidation (which the county civil court
at law here did, in the abstract), consolidation is generally a procedural matter, rather
than a jurisdictional one. Cf. Montgomery v. Willbanks, 202 S.W.2d 851, 853 (Tex.
Civ. App.--Fort Worth 1947, writ ref'd n.r.e.) ("There is no lack of jurisdiction
involved here, because the district court acquired jurisdiction of the issues presented
in the two cases as they were filed, and did not lose jurisdiction simply because he
ordered them tried together."); McNeny v. R.R. Comm'n of Tex., 96 S.W.2d 96, 98
(Tex. Civ. App.--Austin 1936, no writ) (indicating that question of joinder is not
jurisdictional, and analogizing to consolidation); cf. also Allison, 624 S.W.2d at 568
(indicating that joinder and consolidation rulings are reviewed for abuse of discretion). 
Moreover, "[i]t is the general rule that once jurisdiction is lawfully and properly
acquired, no subsequent fact or event in the particular case serves to defeat the
jurisdiction." Haginas, 163 Tex. at 278, 354 S.W.2d at 371. 

 Accordingly, we hold that the trial court had subject-matter jurisdiction to
consolidate the forcible-detainer and tort suits, that its order consolidating them was
thus not void, and that the trial court was not divested of jurisdiction over the
consolidated suit simply because the pre-consolidation suits had involved appellate
and original jurisdiction, respectively. See Williams v. Carter, 176 S.W.2d 580, 582
(Tex. Civ. App.--Galveston 1943, writ ref'd w.o.m.) (holding that trial court did not
lose jurisdiction over two suits--in one of which it exercised appellate jurisdiction,
and in the other of which it exercised original jurisdiction--simply by having
consolidated them); see also Montgomery, 202 S.W.2d at 853 (in reviewing judgments
in two cases consolidated for trial--when one suit involved trial court's appellate
jurisdiction, and other suit involved its original jurisdiction--stating, "There is no lack
of jurisdiction involved here, because the district court acquired jurisdiction of the
issues presented in the two cases as they were filed, and did not lose jurisdiction
simply because he ordered them tried together.").

 2. Whether We May Consider the Propriety of Consolidation

 On rehearing, Nguyen argues that we lack jurisdiction to consider whether the
consolidation was erroneous. Nguyen reasons as follows. This appeal is from a
judgment rendered in a suit seeking, in part, forcible-detainer relief. In such an appeal,
we may not consider matters not essential to, dependent on, or primarily concerned
with the issue of possession. See Tex. Prop. Code Ann. § 24.007. Consolidation is
essential to, dependent on, or primarily concerned with the issue of possession. 
Additionally, consolidation was not a jurisdictional matter. Accordingly, we lack
jurisdiction to consider the propriety of consolidating the suits.

 We assume without deciding that consolidation is a matter essential to,
dependent on, or primarily concerned with the issue of possession, (19) so that, if this
were an appeal from a judgment rendered in just a forcible-detainer suit, we would
lack jurisdiction to consider it. This is not such an appeal, however. Rather, it is an
appeal from a judgment rendered after the consolidation of a forcible-detainer suit, in
which the county civil court at law exercised only appellate jurisdiction, and a suit for
declarations and damages, in which that same court exercised original jurisdiction. 
We have plenary appellate jurisdiction to consider challenges to matters raised by
pleadings invoking the county civil court at law's original jurisdiction, regardless of
whether those matters were also raised in the forcible-detainer pleadings. 

 In her tort-suit pleadings before consolidation, Nguyen sought a declaration that
the lease assignment from Tu to her was not a breach of the lease agreement; after
consolidation, Nguyen sought an alternative declaration that the lease assignment was
void for having been executed under "extreme duress" and asserted waiver and
estoppel as defenses to any breach that the lease assignment caused. These
allegations, which were asserted under and invoked the county civil court at law's
original jurisdiction, supported the portions of the judgment declaring that the lease
assignment between Tu and Nguyen did not constitute a breach and awarding Nguyen
possession of the leased premises. Because the pleadings invoking each type of
jurisdiction sought possession, the trial court's declarations concerning breach and its
award of possession were supported by the exercise of both its original and appellate
jurisdiction. That is, the judgment of possession was not unique to the forcible-detainer pleadings. As we have said above, a forcible-detainer suit may run
concurrently with another action--even if the other action adjudicates matters that
could result in a different determination of possession--because a forcible-detainer
action determines only the right to immediate possession, rather than the parties'
ultimate rights to any other issue. See Lopez, 76 S.W.3d at 605; see also Meridien
Hotels, Inc., 97 S.W.3d at 738 (indicating that district court's interlocutory order
declaring that tenants had defaulted under lease, that landlord had right to terminate
lease, and that tenants no longer had right to possession did not excuse justice court
from proceeding with forcible-detainer action); cf. Neller v. Kirschke, 922 S.W.2d 182,
187 (Tex. App.--Houston [1st Dist.] 1995, writ denied) (indicating that forcible-detainer court did not determine matter of breach of lease, except in order to decide
that landlord was entitled to immediate possession, so that plaintiff-landlord in
separate suit for breach of lease was not entitled to judgment as matter of law on issue
of breach); Valencia v. Garza, 765 S.W.2d 893, 899 (Tex. App.--San Antonio 1989,
no writ) (holding that forcible-entry judgment was not res judicata as to possession in
separate suit alleging claims on contract for sale); Buttery v. Bush, 575 S.W.2d 144,
146 (Tex. Civ. App.--Tyler 1978, writ ref'd n.r.e.) (holding that forcible-entry
judgment was not res judicata as in separate suit seeking declaration of parties rights
under lease agreement and that lease agreement was void).

 Accordingly, we hold that, under the pleadings in this case, we have jurisdiction
to review the propriety of the consolidation order.

 3. Whether Consolidation Was Error

 Although HKDI and Duong challenge the consolidation as being only
fundamental error, we liberally construe their brief as alternatively arguing that the
consolidation was simple error. See Tex. R. App. P. 38.1(e), 38.9; Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989) ("[I]t is our practice to construe liberally
points of error in order to obtain a just, fair and equitable adjudication of the rights of
the litigants.").

 We conclude that consolidation in these circumstances constitutes error. 
Forcible-detainer suits are intended to provide a speedy, summary, and inexpensive
determination of the right to immediate possession, and the rules accomplish this goal
by allowing the parties to litigate only limited matters. See, e.g., Meridien Hotels, Inc.,
97 S.W.3d at 737; see also Tex. R. Civ. P. 739, 740, 745, 746, 748, 749. This object
is thwarted by allowing through consolidation what is not allowed through assertion
of claims in the forcible-detainer suit itself.

 There is authority to support our conclusion. In Texas-Mexican Railway Co.
v. Cahill, a forcible-detainer suit was initiated in justice court, and appeal was taken
to the county's district court. (20) See id., 23 S.W. 232, 232 (Tex. Civ. App.--Galveston
1893, writ ref'd). In overruling the appellant's challenge to the denial of its motion
to consolidate the forcible-detainer suit with another suit involving the same appellee
pending in the same court, this Court explained, in pertinent part:

 [T]he motion to consolidate was properly refused. The appellee's suit,
as we have seen, was brought under the statute which provides a remedy 
for the recovery of the possession of real estate when the premises are in
the quiet occupancy of one, and they are forcibly entered by another, or
where a lessee, after the expiration of his lease, refuses to restore
possession to his lessor. The statute provides a speedy and efficient
remedy for restoring possession to him who is wrongfully deprived of the
same, and no inquiry as to the title to, or the superior right of either party
to the suit or that of any third person in, the property, is permitted. The
[other suit] was a suit of trespass to try title to the lot in question. To
permit the consolidation of such suits would be contrary to the obvious
policy of the law, and in most cases defeat the object of the statute,--the
prompt adjudication of the right of possession to the premises, without
reference to the right of title to the property.


Id. at 232 (emphasis added). We follow the reasoning and conclusion of our Court in
Cahill to hold in this case that the trial court erred in consolidating the tort suit and the
forcible-detainer suit. (21) See id.

 HKDI and Duong opposed the consolidation. Although the standard of review
for consolidation orders is abuse of discretion, (22) the trial court necessarily abused its
discretion here by acting contrary to the law. See Walker, 827 S.W.2d at 840. 

 4. Whether the Error Was Harmful or Rendered Moot

 Texas Rule of Appellate Procedure 44.1 provides:

 (a) Standard for Reversible Error. No judgment may be reversed on appeal
on the ground that the trial court made an error of law unless the court of
appeals concludes that the error complained of:


 (1) probably caused the rendition of an improper judgment; or


 (2) probably prevented the appellant from properly presenting
the case to the court of appeals.

Tex. R. App. P. 44.1.


 From the perspective of the forcible-detainer plaintiff, the harm arising from
having to participate in a jury trial before one can obtain what is supposed to be an
inexpensive, speedy, and summary ruling on the right to immediate possession is
evident. HKDI filed the forcible-detainer suit in July 2003, immediately confessed
judgment, and appealed to the county court. Nguyen asserted her tort counter-claims,
cross-claims, and third-party claims and request for declaratory relief on October 3,
2003. The trial court consolidated the two suits that same month, implicitly overruling
HKDI's motion to strike or to sever Nguyen's tort claims against HKDI and Duong
in the forcible-detainer suit. Trial did not begin until December 2, and it ended on
December 11; there were seven days of trial proceedings. The trial court did not
render judgment adjudicating the right to possession until April 30, 2004. This
significant delay in determining the mere right to immediate possession was caused
by the consideration of tort claims over which the trial court, to the extent that it
exercised its appellate jurisdiction in the forcible-detainer suit, lacked subject-matter
jurisdiction, when the issue should have been decided inexpensively, speedily, and
summarily. See, e.g., Meridien Hotels, Inc., 97 S.W.3d at 737; see also Tex. R. Civ.
P. 739, 740, 745, 746, 748, 749. Therefore, the error in consolidating the two causes
was harmful at the time that the order was rendered. See Tex. R. App. P. 44.1.


 But the consolidated case then proceeded to trial and to final judgment, in part
upon pleadings invoking the court's original jurisdiction. The pleadings invoking the
trial court's original jurisdiction sought a declaration that the lease assignment
between Nguyen and Tu did not breach the lease agreement with HKDI; the same
pleadings alternatively sought a declaration that the lease assignment was void for
having been executed under "extreme duress" and asserted waiver and estoppel as
defenses to any breach that the lease assignment had caused. These allegations, which
were asserted under and invoked the trial court's original jurisdiction, supported the
portion of the judgment declaring that the lease assignment was not a breach and
awarding Nguyen possession of the leased premises. That is, the trial court's final
judgment was an adjudication not of the right to immediate possession, but of the
ultimate right to possession based on the declaratory requests and affirmative defenses
asserted under its original jurisdiction. Put another way, the trial court, in effect,
completely denied HKDI's request for a determination of the right to immediate
possession and instead determined the ultimate question of who was entitled to
possession. 

 Even though a forcible-detainer judgment adjudicates the right to immediate
possession, that determination can later be altered if a judgment, in a separate suit
adjudicating the parties' rights to other issues involving the real property, results in
a different determination of possession. See Lopez, 76 S.W.3d at 605; see also
Meridien Hotels, Inc., 97 S.W.3d at 738 (indicating that district court's interlocutory
order declaring that tenants had defaulted under lease, that landlord had right to
terminate lease, and that tenants no longer had right to possession did not excuse
justice court from proceeding with forcible-detainer action). Accordingly, under the
pleadings in this case, the harm that HKDI suffered by the delay of what should have
been a speedy determination of the right to immediate possession was mooted when
a final judgment, under the trial court's exercise of original jurisdiction and on matters
determining the ultimate issue of possession, was rendered. Put another way, even if
HKDI could somehow obtain an adjudication of the right to immediate possession at
this time, that determination would be moot because the parties' ultimate rights have
already been adjudicated and possession has already been awarded based on those
rights. (23)

 That is not to say that parties in HKDI's position have no remedy. A party
harmed by the trial court's total denial of a speedy determination of the right to
immediate possession may seek, by mandamus when the complained-of ruling occurs
or before it becomes moot, that the court be ordered to adjudicate that right despite the
pendency of another suit that could ultimately lead to a different determination of
possession for the same property. Here, HKDI could have sought mandamus relief
from the consolidation order before final judgment in the consolidated suit was
rendered: HKDI would have had no adequate remedy by appeal after final judgment
because (1) the rendition of that judgment, under these pleadings, would have mooted
a determination of the right to immediate possession and (2) under Cahill, the
consolidation of the forcible-detainer and tort suits was a clear abuse of discretion. 
See In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004) (holding
that mandamus relief is proper only to correct clear abuse of discretion when there is
no adequate remedy by appeal); In re Van Waters & Rogers, Inc., 145 S.W.3d 203,
211 (Tex. 2004) (noting that, although mandamus will ordinarily not issue to correct
erroneous consolidation, writ will issue if "'extraordinary circumstances' are present
that make an ordinary appeal inadequate," such as when "the appellate court would not
be able to cure the error, [or] when the party's ability to present a viable claim . . . is
vitiated . . . .") (quoting Canadian Helicopters Ltd. v. Wittig, 876 S.W.2d 304, 309
(Tex. 1994)); cf. Meridien Hotels, Inc., 97 S.W.3d at 738-39 (holding that county
court did not abuse discretion in issuing mandamus writ ordering justice court to
vacate its order abating forcible-detainer proceedings when justice court abated its suit
solely to allow district court--which had declared that tenants had defaulted under
lease, that landlord had right to terminate lease, and that tenants no longer had right
to possession--to finalize judgment there; also holding that no adequate remedy at law
existed for justice court's interlocutory abatement order). But at this point--upon
these pleadings, this judgment, and these facts--the harm that HKDI suffered from the
deprivation of its right to a speedy determination of immediate possession is moot.

 We overrule this portion of issue one.

D. Personal Jurisdiction Over Duong

 In the remainder of issue one, HKDI and Duong also argue that, because
Nguyen never served Duong in the forcible-detainer suit before consolidation, and
because she excluded him from the last amended petition in that suit, the trial court
lacked personal jurisdiction over Duong to render judgment against him for tortious
interference in the consolidated suit. Accordingly, HKDI and Duong argue that the
final judgment rendered in the consolidated suit was void with respect to Duong. We
may consider this challenge, even though it relates to the pre-consolidation forcible-detainer suit's pleadings, because it concerns personal jurisdiction over Duong, rather
than the issue of possession. Cf. Rice, 51 S.W.3d at 708.


 HKDI and Duong do not contest that Duong was served and answered in the
tort suit, which alleged a conspiracy claim against him, before consolidation. 
Accordingly, Duong became a party defendant in the consolidated suit even though
the specific cause of action (tortious interference) was not alleged against him until
after trial. As long as some cause of action was alleged against Duong in one of the
pre-consolidation suits and he was served or appeared in that suit, the trial court had
personal jurisdiction over him post-consolidation. 

 We overrule the remainder of issue one.

E. Legal-Sufficiency Challenges

 Under issue three, HKDI and Duong assert various legal-sufficiency challenges
to the jury's findings on Nguyen's tort claims and on her defenses. We have
jurisdiction to consider these challenges because they do not relate either solely or at
all to the forcible-detainer pleadings.

 1. Standard of Review

 When, as here, an appellant attacks the legal sufficiency of an adverse finding
on an issue for which it did not have the burden of proof, the appellant must
demonstrate that there is no evidence to support the adverse finding. Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983). Such a no-evidence challenge will be
sustained when "'(a) there is a complete absence of evidence of a vital fact, (b) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more
than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact.'" King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003) (quoting
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997)).

 To the extent that HKDI and Duong challenge the legal sufficiency of the
evidence that Nguyen offered to prove a vital fact, "we must view the evidence in a
light that tends to support the finding of disputed fact and disregard all evidence and
inferences to the contrary." Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709
(Tex. 2003). However, "[t]he final test for legal sufficiency must always be whether
the evidence at trial would enable reasonable and fair-minded people to reach the
verdict under review . . . . [L]egal-sufficiency review in the proper light must credit
favorable evidence if reasonable jurors could, and disregard contrary evidence unless
reasonable jurors could not." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex.
2005). The jury is the sole judge of witnesses' credibility, and it may choose to
believe one witness over another; a reviewing court may not impose its own opinion
to the contrary. Id. at 819. Because it is the jury's province to resolve conflicting
evidence, we must assume that jurors resolved all conflicts in accordance with their
verdict if reasonable human beings could do so. Id.

 2. Specific Legal-Sufficiency Challenges (24)

 a. Duong's Tortious Interference

 Nguyen's theory of tortious interference, as pleaded, appeared to be that the
individual appellants (Tu and Duong) had tortiously interfered with her lease
agreement with HKDI. Jury question number 6 reflected this theory by instructing the
jury that "[Duong] cannot be held liable for inducing [HKDI] to violate a contractual
obligation if he acted in good faith and believed what he did was for the best interest
of [HKDI]." (Emphasis added.) The jury was never asked whether Tu had tortiously
interfered with any of Nguyen's contracts. The jury also expressly found that HKDI
had conspired with Duong and that Tu had not, and it implicitly found that the focus
of Duong and HKDI's conspiracy was Duong's tortious interference with Nguyen's
lease agreement with HKDI. 

 Under part of issue three, HKDI and Duong argue, among other things, that the
trial court erred in rendering judgment on Nguyen's claim for tortious interference
with contractual relations against Duong because Duong was HKDI's corporate officer
and agent and thus, as a matter of law, could not have tortiously interfered with the
lease agreement between Nguyen and HKDI. (25) 

 "The elements of tortious interference with a contract are: (1) the existence of
a contract subject to interference; (2) willful and intentional interference; (3)
interference that proximately caused damage; and (4) actual damage or loss." Powell
Indus., Inc. v. Allen, 985 S.W.2d 455, 456 (Tex. 1998). "When the defendant is both
a corporate agent and the third party who allegedly induces the corporation's breach,
the second element is particularly important." Id. at 456-57. "Because a corporate
officer's acts on the corporation's behalf usually are deemed corporate acts, a plaintiff
must show that the agent acted solely in his own interests." Id. (Emphasis added.) 
"The plaintiff must prove that the agent acted willfully and intentionally to serve the
agent's personal interests at the corporation's expense." Id. (Emphasis added.) "A
corporate officer's mixed motives--to benefit both himself and the corporation--are
insufficient to establish liability." Id. 

 "[W]hen determining whether an agent acted against the corporation's interests,
we consider the corporation's evaluation of the agent's actions." Id. We do so
because "[a] corporation is a better judge of its own best interests than a jury or court." 
Id. Although a complaint by the principal about its agent's actions does not
conclusively show that the agent acted against its principal's interest, "if a corporation
does not complain about its agent's actions, then the agent cannot be held to have
acted contrary to the corporation's interests." Id.

 Duong was the president, shareholder, and owner of HKDI. He signed the lease
agreement with Nguyen and Tu on behalf of HKDI. Nguyen's counsel's questions at
trial repeatedly equated Duong with HKDI. Duong testified that he believed that it
was in the best interest of HKDI to terminate the lease agreement. Nguyen testified
that Duong had threatened to evict Nguyen if she testified adversely to Tu's brother,
who was a friend of Duong's, in her divorce case. Nguyen's attorney argued in
closing that Duong's threat showed a "purely personal" vendetta that "ha[d] nothing
to do with [HKDI] or the business or the corporation," but he also argued that HKDI
"c[a]me back and ratified [Duong's] acts, so they're going to be responsible for what
he did." He further argued in closing that Duong's tortious interference with the lease
agreement was "for personal reasons." 

 The above is no evidence that Duong acted solely in his own interest and
against HKDI's interests. Importantly, we have found no evidence--and Nguyen has
directed us to none--that HKDI objected to Duong's instigating the eviction or that
HKDI's interests lay elsewhere than in evicting Nguyen and Tu. Indeed, Nguyen's
attorney argued to the jury that HKDI ratified Duong's acts and that that ratification
made HKDI liable for Duong's acts; moreover, HKDI has consistently remained the
plaintiff in the forcible-detainer suit to evict Nguyen and Tu. Accordingly, we hold
that legally insufficient evidence supports the jury's finding that Duong was liable for
tortious interference. We thus hold that the trial court erred by denying HKDI and
Duong's motion for directed verdict and by overruling their objection to the
submission of the jury question on liability for this cause of action.

 We sustain this portion of issue three.

 b. Civil Conspiracy

 Nguyen pleaded that all three appellants conspired to evict her. The conspiracy
charge was not expressly predicated on a liability question for an underlying wrong;
nonetheless, the only underlying wrong for which damages were assessed was
Duong's tortious interference, so that Duong's tortious interference could have been
the only basis for conspiracy and thus for HKDI's liability. Because the claim against
Duong for tortious interference was the only underlying cause of action for which
actual damages were awarded and that could have supported a claim for civil
conspiracy against HKDI or Duong, and because the tortious-interference claim
against Duong failed as a matter of law for the reasons stated above, HKDI and Duong
argue, under part of issue three, that the trial court erred in rendering judgment against
them on Nguyen's civil-conspiracy claim. (26)

 "Civil conspiracy, generally defined as a combination of two or more persons
to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful
means, might be called a derivative tort" because the "defendant's liability for
conspiracy depends on participation in some underlying tort for which the plaintiff
seeks to hold at least one of the named defendants liable." Tilton v. Marshall, 925
S.W.2d 672, 681 (Tex. 1996) (emphasis added). The claim's elements are "(1) two or
more persons; (2) an object to be accomplished; (3) a meeting of the minds on the
object or course of action; (4) one or more unlawful, overt acts; and (5) damages as
a proximate result." Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005). "[C]ivil
conspiracy 'came to be used to extend liability in tort . . . beyond the active wrongdoer
to those who have merely planned, assisted, or encouraged his acts.'" Carroll v.
Timmers Chevrolet, Inc., 592 S.W.2d 922, 925-26 (Tex. 1979) (quoting W. Prosser,
Handbook Of The Law Of Torts, § 46, at 293 (1971)). 

 Jury questions 8 and 9 asked whether HKDI or Duong were "part of a
conspiracy that damaged [Nguyen]" and instructed that, for the party to be part of a
conspiracy, he or it "and another person or persons must have had knowledge of,
agreed to, and intended a common objective or course of action that resulted in
damages to [Nguyen]." The instruction continued: "One or more persons involved in
the conspiracy must have performed some act or acts to further the conspiracy." As
stated above, jury questions 8 and 9 were not predicated on a jury tort finding, but
given that the only tort that was submitted to the jury was Duong's tortious
interference, that tort could have been the only "course of action" or "common
objective" of the conspiracy. We have already sustained HKDI and Duong's legal-sufficiency challenge to the jury's finding that Duong was liable for tortious
interference. If there is no underlying wrong or object (here, tortious interference),
then there can be no conspiracy. See Tri, 162 S.W.3d at 556; Tilton, 925 S.W.2d at
681. Accordingly, we hold that legally insufficient evidence supports the jury's
findings that HKDI and Duong were part of a conspiracy that damaged Nguyen. (27) We
thus hold that the trial court erred by implicitly denying what we have construed as
HKDI and Duong's pre-judgment motion for JNOV or to disregard jury findings, by
overruling their directed verdict on this ground, and by rendering judgment for
Nguyen on this claim.

 We sustain this portion of issue three.

 c. Actual Damages

 Under part of issue three, HKDI and Duong first argue that the trial court erred
as a matter of law in rendering judgment for $15,312.58 in actual damages--which
represented the mental-anguish damages that Nguyen elected to recover, plus
interest--because those damages were predicated on an affirmative finding that Duong
was liable for tortious interference, which predicate failed as a matter of law for the
reasons stated above. (28) Alternatively, HKDI and Duong argue that no evidence
supports the jury's assessment of mental-anguish damages because the relevant
evidence does not demonstrate the type of high degree of mental suffering required to
obtain this type of damages. (29) Finally, HKDI and Duong argue that the jury's award
of $49,266.66 in costs of defending her right to possession cannot support the actual
damages awarded because Nguyen elected to receive and was awarded attorney's fees,
which, if she were also awarded the costs of defending possession, would constitute
a double recovery. (30)

 Jury question 7, the sole question concerning actual damages, was predicated
on an affirmative answer to jury question 6, concerning Duong's tortious interference
with contract. It was not predicated on jury questions 8 or 9, concerning civil
conspiracy. (31) We have already held that legally insufficient evidence supports the
jury's determination that Duong tortiously interfered with the lease assignment--the
sole predicate to the jury's actual damages determination. Accordingly, we hold that
legally insufficient evidence supports the jury's actual-damages findings (both mental-anguish damages and those for right to defend possession). We thus hold that the trial
court erred by implicitly denying what we have construed as HKDI and Duong's pre-judgment motion for JNOV or to disregard jury findings and by rendering judgment
for Nguyen for any amount of actual damages. We thus need not reach HKDI and
Duong's remaining legal-sufficiency challenges to the award of actual damages.

 We sustain this portion of issue three.

 d. Malice and Punitive Damages

 Under part of issue three, HKDI and Duong also argue that, because legally
insufficient evidence exists of the only actual damages that Nguyen elected to
recover--mental-anguish damages--and because punitive damages cannot be awarded
absent the award of actual damages, the trial court erred in assessing punitive damages
against HKDI and Duong. (32) HKDI and Duong further argue that the trial court erred
in assessing punitive damages against HKDI because the jury was not asked to find
that HKDI had acted with malice, so that there was no predicate finding against HKDI
that would have allowed punitive damages. (33)

 Jury question 15, concerning punitive damages against Duong, was predicated
on an affirmative finding on jury question 11, which asked if Duong's malice had
caused Nguyen damages. Jury question 16, concerning punitive damages against
HKDI, was likewise predicated on an affirmative finding on jury question 11, which
asked if Duong's malice had caused Nguyen damages. The jury charge contained no
question concerning whether HKDI had acted with malice or whether that malice had
harmed Nguyen. Jury question 11, concerning Duong's malice, was predicated on an
affirmative finding to jury question 8, which asked the jury whether Duong had been
part of a conspiracy that damaged Nguyen. The only actual-damages question was
jury question number 7, which was predicated on an affirmative answer to jury
question number 6, concerning Duong's tortious interference; the actual-damages
question was not predicated on jury questions 8 or 9, concerning civil conspiracy.

 We first sustain HKDI and Duong's challenge to the assessment of punitive
damages against HKDI. Under the statute applicable to this case, exemplary damages
could be awarded only if Nguyen proved by clear and convincing evidence that the
harm with respect to which she sought recovery of exemplary damages resulted from
(in addition to situations irrelevant here) malice. See Act of Apr. 11, 1995, 74th Leg.,
R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 110 (amended 2003) (current version at
Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (Vernon Supp. 2006)). The jury was
asked to find malice for Duong and Tu, but not for HKDI. In the charge, the court
submitted separate liability and punitive-damages questions for Duong and HKDI,
indicating that when it submitted questions concerning Duong, the court meant Duong
in his individual capacity, rather than in his representative capacity. Accordingly, the
jury was never asked to find that HKDI (i.e., Duong acting in his representative
capacity) acted with malice, a necessary predicate to obtaining punitive damages
against HKDI. See Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws
108, 110 (amended 2003). The trial court thus erred in awarding punitive damages
against HKDI. See id.; Akin v. Dahl, 661 S.W.2d 917, 921-22 (Tex. 1983) (holding
that finding of civil conspiracy, when object of that conspiracy is tort of which malice
is element, suffices to make co-conspirators subject to punitive damages even without
separate malice finding; further indicating, however, that when "object of the
conspiracy is an unlawful tort, such as negligence, which did not contain wanton
behavior, malice, or their progeny as an element of the cause of action, then that
additional finding [of malice] would be necessary as to each co-conspirator against
whom exemplary damages were sought.").

 We also sustain HKDI and Duong's challenge to the assessment of punitive
damages against Duong. For the reasons stated earlier, we have already held that the
trial court erred in rendering judgment for actual damages for Duong's tortious
interference. (34) The trial court thus erred in awarding punitive damages against Duong. 
See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 667 (Tex.
1990) ("Since we have determined that there is no evidence that John Butler or Butler
Companies tortiously interfered with the Fowler-Welch contract, Welch is not entitled
to an award of actual damages. Recovery of actual damages is a prerequisite to the
receipt of exemplary damages. Consequently, Welch is not entitled to recover
exemplary damages.") (citation omitted).

 For these reasons, we hold that the trial court erred by implicitly denying what
we have construed as HKDI and Duong's pre-judgment motion for JNOV or to
disregard jury findings, by overruling their objection to the submission of the charge
issue on punitive damages against HKDI, and by rendering judgment for punitive
damages against HKDI and Duong.

 We sustain this portion of issue three.

 e. Attorney's Fees

 The jury awarded Nguyen $73,900 in attorney's fees for trial preparation and
$6,000 in attorney's fees for preparation of post-trial motions. The trial court, in
rendering judgment awarding Nguyen the fees that the jury found, recited, "[Nguyen],
as the prevailing party, is entitled to recover attorney's fees under the Declaratory
Judgment Act and section 24.006 of the Texas Property Code." Under issue three,
HKDI and Duong argue that the trial court erred as a matter of law in rendering
judgment for the attorney's fees that the jury found because (1) recovery of actual
damages is a prerequisite to recovering attorney's fees; (2) the Declaratory Judgment
Act ("DJA") did not support the award of attorney's fees because the declaratory
judgment that Nguyen sought in her pre-consolidation tort suit duplicated the relief
sought by HKDI and Duong in the pre-consolidation forcible-detainer suit; and (3)
Nguyen did not segregate her attorney's fees. (35) HKDI and Duong preserved these
arguments in their motion for directed verdict, their objections to the charge, and their
objections to Nguyen's motion for entry of judgment and their own motion for entry
of judgment, which we have construed as motions for JNOV or to disregard the
verdict. (37) See Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991).

 i. Actual Damages as Prerequisite

 Under part of issue three, HKDI and Duong argue that Nguyen cannot recover
attorney's fees because she is not entitled, for the reasons discussed above, to recover
actual damages, which recovery they assert is a prerequisite to recovery of attorney's
fees.


 The trial court cited the DJA as a basis for awarding Nguyen her attorney's fees. 
The DJA empowers courts "to declare rights, status, and other legal relations whether
or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann.
§ 37.003(a) (Vernon 1997) (emphasis added). The DJA also provides that "the court
may award costs and reasonable and necessary attorney's fees as are equitable and
just." Id. § 37.009 (Vernon 1997). The only requirements that the statute provides are
that the fees be reasonable and necessary and that their award be equitable and just. 
See id. One need not even be the prevailing party or seek affirmative relief to be
awarded attorney's fees under the DJA, as long as the award of fees is equitable and
just. See Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Util. Dist. ex rel. Bd. of
Dirs., 198 S.W.3d 300, 318 (Tex. App.--Texarkana 2006, pet. denied) ("Either party
may obtain attorney's fees [under DJA] regardless of which party is affirmatively
seeking relief."); Del Valle Indep. Sch. Dist. v. Lopez, 863 S.W.2d 507, 512-13 (Tex.
App.--Austin 1993, writ denied) ("[A]n award [of attorney's fees] under the [DJA]
is not limited to the prevailing party."); see also Barshop v. Medina County
Underground Water Conservation Dist., 925 S.W.2d 618, 637 (Tex. 1996) (rejecting
argument that party had to "substantially prevail" in order to recover attorney's fees
under DJA). For this reason, and because the DJA authorizes relief in the form of a
declaration (rather than damages), the DJA claimant obviously need not recover
damages to be entitled to recover attorney's fees under that statute.

 We overrule this challenge under issue three.

 ii. Recovery under the DJA

 Under part of issue three, HKDI and Duong also argue that the trial court could
not award attorney's fees under the DJA because the declaratory judgment that
Nguyen sought in her pre-consolidation tort suit duplicated the relief sought by HKDI
in the pre-consolidation forcible-detainer suit. Specifically, HKDI and Duong argue
that the forcible-detainer allegations "resolved the issues of duress and the
applicability of the Lease's anti-assignment clause," so that Nguyen's DJA request
was merely redundant of what would have been determined in the forcible-detainer
suit.

 In the pre-consolidation tort suit, Nguyen pleaded for alternative declarations
that (1) the lease assignment did not breach the lease agreement and (2) the lease
assignment was void for having been executed under duress. In the pre-consolidation
forcible-detainer suit, HKDI alleged that the lease assignment was a default under the
lease agreement. These allegations were joined upon consolidation. 

 The DJA allows the trial court to award reasonable and necessary attorney's fees
as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon
1997). However, "[a] declaratory judgment action may not be used solely to obtain
attorney's fees that are not otherwise authorized by statute or to settle disputes already
pending before a court." Southwest Guar. Trust Co. v. Hardy Rd. 13.4 Joint Venture,
981 S.W.2d 951, 956 (Tex. App.--Houston [1st Dist.] 1998, pet. denied) (emphasis
added).

 We hold that Nguyen's DJA request was not merely redundant of the issues
litigated in the forcible-detainer suit, so that fees would be unavailable to Nguyen. 
First, Nguyen filed the tort suit before HKDI filed the forcible-detainer suit, and she
sought declaratory relief in her original petition in the tort suit. Only afterwards did
HKDI, not Nguyen, initiate forcible-detainer proceedings. And later still, the trial
court consolidated the proceedings. This sequence of events demonstrates that
Nguyen did not allege declaratory relief solely to obtain fees that were not otherwise
authorized (indeed, at the time that she filed the tort suit, the DJA clearly authorized
those fees) or to settle disputes that were already pending before the court. HKDI and
Duong do not explain how consolidation would retroactively render Nguyen's prior
request for declaratory relief a mere subterfuge for obtaining fees.

 Second, and in any event, the court in a forcible-detainer suit often (as here)
construes a lease and considers breaches of or defenses to lease provisions, but it does
so only as part of determining which party has the superior right to immediate
possession. See Ward, 115 S.W.3d at 270. It does not determine the parties' ultimate
rights to any other issue in controversy relating to the particular realty. Lopez, 76
S.W.3d at 605. For these reasons, a forcible-detainer suit may run concurrently with
another action in another court--even if the other action adjudicates matters that could
result in a different determination of possession from that rendered in the forcible-detainer suit. See Villalon, 176 S.W.3d at 70-71. This last concept has been extended
to other suits in which declaratory relief is sought. Cf. Meridien Hotels, Inc., 97
S.W.3d at 738.

 If a suit to declare the parties' rights under a lease can be maintained
simultaneously with a forcible-detainer suit--even when the forcible-detainer court
may simultaneously be considering the same rights under the same lease--then it is
hard to imagine that the claimant in the separate DJA suit could not obtain attorney's
fees simply because a forcible-detainer suit was on-going. It is even harder to imagine
that the DJA claimant could not obtain attorney's fees when her suit preceded the
forcible-detainer action.

 We overrule this challenge under issue three.

 iii. Failure to Segregate

 Also under part of issue three, HKDI and Duong argue that the trial court erred
in rendering judgment on the jury's verdict for attorney's fees because Nguyen failed
to segregate the fees attributable to those claims for which fees were recoverable from
those for which they were not. HKDI and Duong preserved this challenge through an
objection to the charge. See Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10
(Tex. 1991); Young v. Neatherlin, 102 S.W.3d 415, 420 (Tex. App.--Houston [14th
Dist.] 2003, no pet.) (holding that objection to charge preserved challenge, even
though party had not objected to testimony on unsegregated fees). We apply a hybrid
standard of review because the issue of whether fees must be segregated can be a
mixed question of law and fact. See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d
299, 313 (Tex. 2006).

 The trial court, in rendering judgment awarding Nguyen the fees found by the
jury, recited, "[Nguyen], as the prevailing party, is entitled to recover attorney's fees
under the [DJA] and section 24.006 of the Texas Property Code." We have already
explained why Nguyen could recover attorney's fees under the DJA. Additionally, she
prevailed in the forcible-detainer matter by having been awarded possession, entitling
her to attorney's fees for counsel's work relating to the forcible-detainer allegations. 
See W. Anderson Plaza v. Feyznia 876 S.W.2d 528, 537 (Tex. App.--Austin 1994, no
writ). But Nguyen also asserted claims for conspiracy, tortious interference with
contract, wrongful eviction (though that claim did not go to the jury), and unfair
competition (which also did not go to the jury) and sought punitive damages and
indemnity.

 Neither party indicates where in the record Nguyen proved her attorney's fees,
but what testimony we have found proving Nguyen's attorney's fees does not
segregate those incurred for work done in prosecuting Nguyen's DJA request and
defending the forcible-detainer allegations, for which fees were recoverable, (38) and for
work done in prosecuting Nguyen's tort claims, for which fees were not recoverable. (39) 
Nguyen does not deny that her expert did not segregate her attorney's fees among
causes of action and defenses, but instead invokes an exception to the requirement:
that her claims, counter-claims, and third-party claims in both pre-consolidation suits
and in the consolidated suit were inextricably intertwined, so that her expert did not
need to segregate fees among claims. In support, Nguyen does not rely on her own
expert's testimony that the claims were so inextricably intertwined that they cannot be
segregated; rather, she relies on the following questioning, by HKDI and Duong's
counsel, of the expert testifying to Tu's attorney's fees:

 Counsel: Is it possible for you to segregate out fees that are
associated with defending the [forcible-detainer]
matter . . . versus the claims made by [Nguyen]?


 Tu's Expert: The matters are inextricably intertwined and cannot
be segregated out. To defend [Tu] in one claim also
defends her in the claims that [Nguyen] has brought
against her.


 Parties seeking to recover attorney's fees are "required to segregate fees
between claims for which [fees] are recoverable and claims for which they are not." 
Chapa, 212 S.W.3d at 311. This rule is not without an exception. But that exception
has changed over time. At the time of trial in this cause, as well as when the parties
briefed this appeal, the following exception to the segregation-of-fees requirement
existed:

 A recognized exception to this duty to segregate arises when the
attorney's fees rendered are in connection with claims arising out of the
same transaction and are so interrelated that their "prosecution or defense
entails proof or denial of essentially the same facts." Therefore, when the
causes of action involved in the suit are dependent upon the same set of
facts or circumstances and thus are "intertwined to the point of being
inseparable," the party suing for attorney's fees may recover the entire
amount covering all claims. 


Sterling, 822 S.W.2d at 11-12 (quoting Gill Sav. Ass'n v. Chair King, Inc., 783
S.W.2d 674, 680 (Tex. App.--Houston [14th Dist.] 1989), modified, 797 S.W.2d 31
(Tex. 1990)) and Flint & Assoc. v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d
622, 624-25 (Tex. App.--Dallas 1987, writ denied)), modified by Chapa, 212 S.W.3d
at 314. It is this exception that Nguyen invoked here and below. However, the
exception was modified during pendency of this appeal:

 Intertwined facts do not make tort [attorney's] fees recoverable; it is only
when discrete legal services advance both a recoverable and
unrecoverable claim that they are so intertwined that they need not be
segregated. We modify Sterling to that extent.


Chapa, 212 S.W.3d at 313-14 (emphasis added). 

 Regardless of which standard applies to our review of this case, we hold that
Nguyen did not carry her burden of demonstrating that the exception to the
segregation-of-fees duty applied. Under the former standard of Sterling, Tu's expert's
testimony that Tu's attorney's fees could not be segregated because her defense to the
forcible-detainer suit was inextricably intertwined with her defense against Nguyen's
tort claims is one thing; expert testimony concerning Nguyen's attorney's fees is
another. Moreover, Tu's expert's testimony compared the torts or claims that Nguyen
asserted against her (conspiracy, unfair competition, breach of fiduciary duty,
indemnity, and tortious interference with contract) with matters relevant to the
forcible-detainer proceeding. That testimony did not also consider whether the tort
that Nguyen had asserted only against HKDI (wrongful eviction), her seeking
injunctive relief to prevent HKDI from evicting her, her seeking injunctive relief
against HKDI and Duong's law firm for having contacted her allegedly in violation
of disciplinary rules, and the matters related to Nguyen's defense against HKDI and
Duong's counter-claim for sanctions were inextricably intertwined with Nguyen's
claims and defenses for which fees were recoverable. Additionally, Tu's counsel's
testimony is conclusory. And under the new standard of Chapa, whether the claims
were inextricably intertwined is not the test: rather, the test is whether discrete legal
services advance both a claim or defense for which fees are recoverable and a claim
or defense for which fees are unrecoverable that fees need not be segregated. See id.

 We sustain this portion of issue three. When an appellate court sustains a
challenge that attorney's fees were not properly segregated, the remedy is to sever that
portion of the judgment awarding attorney's fees and to remand the cause for the issue
to be relitigated. See Sterling, 822 S.W.2d at 11-12; accord Chapa, 212 S.W.3d at
314; see also Brown v. Traylor, 210 S.W.3d 648, 659-60 (Tex. App.--Houston [1st
Dist.] 2006, no pet.) (holding that amount of attorney's fees was issue that was
separable under Tex. R. App. P. 44.1(b) and that thus could be remanded for trial on
that sole issue). On remand, the standard established by the Texas Supreme Court in
Chapa for segregating attorney's fees will apply.

F. Trial and Post-Trial Amendment of Pleadings

 In pertinent part, HKDI and Duong phrase their issue two as follows: "The court
will decide if the trial court properly granted Nguyen leave to amend or supplement
her pleadings after trial to inject [the] new, immaterial, and prejudicial" affirmative
defenses of waiver and estoppel. We have jurisdiction to consider this challenge
because it does not relate solely to the forcible-detainer pleadings.

 The focus of HKDI and Duong's brief is almost entirely on waiver and estoppel. 
However, the jury answered in the affirmative that the failure to obtain HKDI's written
consent to the lease assignment was "excused" by waiver, estoppel, and duress. The
trial court's judgment recited, "The Court finds that . . . the lease agreement was not
breached by [Nguyen and Tu's] compliance with a Court Ordered assignment of [Tu's]
lease interest in relation to the dissolution of their partnership . . . ," which appears to
have been applying a variation of Nguyen's defensive theory of duress. The final
judgment also awarded Nguyen possession. 

 "Generally speaking, an appellant must attack all independent bases or grounds
that fully support a complained-of ruling or judgment." Britton v. Tex. Dep't of
Criminal Justice, 95 S.W.3d 676, 681 (Tex. App.--Houston [1st Dist.] 2002, no pet.). 
This rule exists because "if an independent ground fully supports the complained-of
ruling or judgment, but the appellant assigns no error to that independent ground, then
(1) we must accept the validity of that unchallenged independent ground . . . and thus
(2) any error in the grounds challenged on appeal is harmless because the
unchallenged independent ground fully supports the complained-of ruling or
judgment." Id. (citation omitted). For example, "when independent jury findings fully
support a judgment, an appellant must attack each independent jury finding to obtain
a reversal." Id. at 682.

 Given the phrasing of their issue, the fact that its focus is on the propriety of
granting Nguyen leave to amend her petition, and that the affirmative defense of
duress had already been pleaded before trial (and so did not require a trial
amendment), HKDI and Duong have not challenged the jury's finding that duress
excused the lease assignment without consent. (40) Under this charge, the jury's finding
of duress supports, by itself, the judgment of possession rendered. Accordingly, any
error in allowing Nguyen belatedly to amend her petition to assert the other affirmative
defenses of waiver and estoppel is harmless as a matter of law.

 We overrule issue two.

Tu's Appeal


 In three issues, Tu contends that the trial court erred in rendering judgment
declaring that the lease and partnership assignments' indemnity provisions made Tu
responsible for Nguyen's attorney's fees and awarding Nguyen $79,900 in attorney's
fees against Tu, jointly and severally with HKDI and Duong. Tu bases her challenge
on three grounds: (1) the court declared that the lease assignment did not breach the
lease agreement with HKDI, which declaration allegedly eliminated the sole basis for
contractual indemnity; (2) alternatively, the claims alleged against Nguyen did not fall
within the indemnity agreements' unambiguous terms; and (3) Nguyen did not
segregate evidence of her attorney's fees.

A. Pertinent Facts

 Two sets of indemnity provisions were at issue in the consolidated suit. The
first set was included in the partnership assignment between Tu and Nguyen, and the
second set was included in the lease assignment between them. We need to examine
only the lease assignment's indemnity provision:

 Assignor [Tu] hereby indemnifies Assignee [Nguyen] and agrees
to hold [Nguyen] harmless from and against any and all claims, demands,
obligations, liabilities, costs, losses and expenses, including without
limitation attorney's fees resulting from or arising out of all provisions,
agreements, obligations, covenants and conditions which are or were
provided or required to be paid, performed, discharged, and/or observed
prior to the effective date of this Assignment by [Tu] under or in
connection with the Lease [between HKDI and Tu and Nguyen].

(Emphasis added.)

 In her pleadings filed in the consolidated suit, Nguyen asserted an indemnity
claim against Tu, alleging that "[Tu's] actions would constitute a breach of contract
and would bound [sic] her to an indemnification agreement to [Nguyen] and the
partnership" and that "[Nguyen] is entitled to indemnification from [Tu] for damages
for attorney fee [sic]." 

 The jury question relevant to our discussion asked if "the 'assignment' from Tu
to [Nguyen] was 'excused'" by waiver, estoppel, or duress. Because this jury question
concerned affirmative defenses, (41) the question, its instructions, and its definitions
impliedly assumed that the execution of the lease assignment without HKDI's prior
written consent violated the terms of the lease agreement with HKDI. (42) The final
judgment then recited as follows:

 The Court finds that, in interpreting the lease agreement as a
whole, the lease agreement was not breached by [[Nguyen's] and [Tu's]
compliance with a Court Ordered assignment of [Tu's] lease interest in
relation to the dissolution of the partnership which was done without the
prior written consent of [HKDI].


 . . . .


 The jury returned a verdict as to [Nguyen's] affirmative defenses that the
Court Ordered assignment of the lease interest, if the assignment was a
breach of the [lease] agreement, was excused. 

B. Standards of Review and the Law

 We review questions of law like those raised in Tu's first and second issues de
novo. See, e.g., State v. Delany, 197 S.W.3d 297, 300 (Tex. 2006); MCI Telecomms.
Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999) (instructing that
interpretation of unambiguous contract is question of law, which is reviewed de novo). 
Courts "may not expand the parties' rights or responsibilities beyond the limits agreed
upon by them in the [indemnity] contract." Ideal Lease Serv., Inc. v. Amoco Prod.
Co., 662 S.W.2d 951, 953 (Tex. 1983); accord Crowder v. Scheirman, 186 S.W.3d
116, 119 (Tex. App.--Houston [1st Dist.] 2005, no pet.) ("The supreme court requires
that indemnity agreements be strictly construed to give effect to the parties' intent as
expressed in the agreement."). 

 We apply the same standard of review and substantive law to Tu's third issue,
concerning the failure to segregate attorney's fees, as we did to HKDI and Duong's
similar challenge. See Chapa, 212 S.W.3d at 313.


C. The Effect of the Judgment's Recitation That No Breach Occurred

 In her first issue, Tu argues that the judgment's recitation that "the lease
agreement was not breached" negates any ground for indemnification. Specifically,
Tu contends that only a breach of the lease agreement with HKDI could trigger her
duty to indemnify Nguyen under the lease assignment between Tu and Nguyen. 

 We disagree. First, the judgment's recitation on which Tu relies indicates that
the court found no breach not because the failure to obtain HKDI's prior written
consent did not violate the lease agreement with HKDI, but instead because that
violation was excused. The judgment's recitation that "the lease agreement was not
breached by [Nguyen's] and [Tu's] compliance with a Court Ordered assignment of
[Tu's] lease interest," along with its reference to the jury's affirmative-defense finding
that the "assignment" was "excused" by duress, can be read as a finding that duress
excused the violation of the lease agreement. (Emphasis added.) Accordingly, viewed
in context, the judgment's recitation on which Tu relies is not a finding that she did
not violate any duties under the lease assignment.

 Additionally, the scope of the lease assignment's indemnity provision was
broad. Tu reads this indemnity provision restrictively, as being triggered only if Tu
and Nguyen were held liable for having breached the lease agreement with HKDI. In
contrast, the lease assignment's indemnity provision actually read as follows:

 Assignor [Tu] hereby indemnifies Assignee [Nguyen] and agrees
to hold [Nguyen] harmless from and against any and all claims, demands,
obligations, liabilities, costs, losses and expenses, including without
limitation attorney's fees resulting from or arising out of all provisions,
agreements, obligations, covenants and conditions which are or were
provided or required to be paid, performed, discharged, and/or observed
prior to the effective date of this Assignment by [Tu] under or in
connection with the Lease [between HKDI and Tu and Nguyen].

(Emphasis added.) The indemnity provision was thus triggered by, among other
things, costs that resulted from or arose out of any obligation (or other listed matter)
that Tu had to perform under the lease agreement with HKDI. The scope of this
language was thus broader than simply costs resulting from liability for the lease
agreement's breach. 

 Tu was the party assigning her leasehold interest to Nguyen. The lease
agreement required that "Tenant [Tu and Nguyen] . . . not assign this Lease, or any
interest therein, . . . without first obtaining the written consent of [HKDI]" and that
"[Tu and Nguyen] shall not sell, convey, or assign any interest in the corporation [sic]
without prior written approval from [HKDI]." It is undisputed that HKDI's written
consent to the lease assignment was not obtained prior to the assignment's execution. 
That failure came within the scope of the indemnity provision--whether or not the
failure was ultimately excused by waiver, estoppel, or duress. The judicial recitation
that "the lease agreement was not breached" did not, therefore, negate the contractual
basis for indemnity.

 We overrule Tu's first issue.

D. The Challenge That the Claims Against Nguyen Fell Outside the Indemnity
Agreement's Scope

 The lease assignment's indemnity provision required Tu to indemnify Nguyen
only for failed obligations (or other listed matters) under the lease agreement that Tu
had to perform "prior to" the lease assignment's execution. In her second issue, Tu
alternatively argues that the failure to obtain HKDI's prior written consent to the lease
assignment could not have occurred before the lease assignment was executed because
the failure occurred at the time of the assignment's execution. We reject this
argument. Although the lease agreement with HKDI was not violated until the
moment that Tu and Nguyen signed the lease assignment, the obligation that Tu, as
assignor, was required to perform under the lease agreement with HKDI was to obtain
HKDI's prior written consent to the assignment, which failure necessarily occurred
prior to the lease assignment's execution.

 We overrule Tu's second issue.

E. Nguyen's Failure to Segregate Attorney's Fees

 In her third issue, Tu urges that the trial court erred in rendering judgment on
the jury's verdict for attorney's fees because Nguyen failed to segregate the fees
attributable to those claims for which fees were recoverable from those for which they
were not. Tu preserved this challenge by charge objection. See Sterling, 822 S.W.2d
at 10; Young, 102 S.W.3d at 420. We sustain Tu's third issue for the same reasons that
we sustained the same argument under issue three of HKDI and Duong's appeal. The
same remedy applies. See Sterling, 822 S.W.2d at 11-12; see also Brown, 210 S.W.3d
at 659-60.

Conclusion


 We reverse those portions of the judgment awarding actual and punitive
damages against HKDI and Duong on Nguyen's tort claims against them, and we
render judgment that Nguyen take nothing on her tort claims against HKDI and
Duong. We reverse that portion of the judgment awarding Nguyen attorney's fees
against HKDI, Duong, and Tu, jointly and severally. We affirm the judgment of the
trial court in all other respects. We remand the cause for the consideration of the issue
of Nguyen's properly recoverable attorney's fees. See Tex. R. App. P. 44.1(b). This
is a limited remand. See Hudson v. Wakefield, 711 S.W.2d 628, 630 (Tex. 1986);
Hansen v. Acad. Corp., 961 S.W.2d 329, 331 (Tex. App.--Houston [1st Dist.] 1997,
pet. denied). 

 

 Tim Taft

 Justice


Panel consists of Chief Justice Radack and Justices Taft and Nuchia.
1. The Fourteenth Court of Appeals affirmed the judgment in the partnership suit. 
Phuong Truong-Tu v. Kim Loan Nguyen, No. 14-02-00461-CV, 2004 WL
162941 (Tex. App.--Houston [14th Dist.] Jan. 29, 2004, pet. denied) (memo.
op.).
2. Kim Loan Nguyen v. Hong Kong Dev., No. 793769 (County Civ. Ct. at Law
No. 3, Harris County, Tex.).
3. Hong Kong Dev., Inc. v. Kim Loan Nguyen, No. 802024 (County Civ. Ct. at
Law No. 1, Harris County, Tex.). This was the same county court that had
heard the partnership suit between Nguyen and Tu.
4. Nguyen also asserted a third-party claim against another individual, but she
dropped that individual from the suit in later pleadings.
5. At one time in the consolidated suit, Nguyen had also sued HKDI's and
Duong's law firm, seeking to enjoin it from communicating with her in alleged
violation of the Texas Disciplinary Rules of Professional Conduct. However,
Nguyen later non-suited that claim.
6. We construe HKDI and Duong's objections to Nguyen's motion for entry of
judgment as a pre-judgment motion for judgment notwithstanding the verdict
("JNOV") or to disregard jury findings because the objections did more than
merely point out errors in Nguyen's proposed judgment. See State Bar of Tex.
v. Heard, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a
plea for relief to determine the nature of the pleading, not merely at the form
of title given to it."); Sandles v. Howerton, 163 S.W.3d 829, 836 (Tex.
App.--Dallas 2005, no pet.) (indicating that "a motion should be governed by
its substance and not merely by its title"). For instance, HKDI and Duong's
"objections" (1) requested that the trial court rule in their favor, (2) stated
reasons that the verdict should be disregarded, (3) argued that no evidence
supported certain jury findings, and (4) raised legal bars to the rendition of
judgment on the jury's findings. See 6 Roy W. McDonald & Elaine A.
Grafton Carlson, Texas Civil Practice §§ 8:14-8:18, at 218-25 (2d ed.
1998) (setting out function of motion to disregard jury findings and motion for
JNOV and what appellate complaints those motions preserve). Moreover,
HKDI and Duong's objections were filed simultaneously with their motion for
entry of judgment, which incorporated by reference their objections, requested
a take-nothing judgment on Nguyen's claims and an award of possession, and
recited that the court was disregarding various jury findings. HKDI and
Duong's objections and motion for entry of judgment thus together constituted
a pre-judgment request for affirmative relief.
7. The trial court did not render judgment for the $49,266.66 that the jury had
found that Nguyen, as a result of Duong's tortious interference, had incurred
in costs defending her right to the leased premises. Therefore, the sole actual
damages that the court awarded Nguyen for Duong's tortious interference (and
for HKDI's and Duong's conspiracy) was $15,000 in mental-anguish damages. 
The parties both represent on appeal that Nguyen elected to recover mental-anguish damages and attorney's fees, rather than also recovering damages for
defending possession. Nguyen further represents on appeal that she did so in
order "to ensure that there was no double recovery" between the attorney's fees
and the costs of defending possession.
8. An unsigned docket-sheet entry recites, "8/13/04 M4 JNOV--Denied No
order." However, we generally may not consider recitations in the docket sheet
as rulings. In re Bill Heard Chevrolet, 209 S.W.3d 311, 315 (Tex.
App.--Houston [1st Dist.] 2006, orig. proceeding).
9. Volume Millwork, Inc. v. West Houston Airport Corp., No. 01-03-01214-CV,
2006 WL 3628830, at * 4 (Tex. App.--Houston [1st Dist.] Dec. 14, 2006, pet.
denied); Carlson's Hill Country Beverage, L.C. v. Westinghouse Rd. Joint
Venture, 957 S.W.2d 951, 952-53 (Tex. App.--Austin 1997, no pet.).
10. Rice v. Pinney, 51 S.W.3d 705, 707 (Tex. App.--Dallas 2001, no pet.).
11. Powell v. Mel Powers Inv. Builder, 590 S.W.2d 837, 839 (Tex. Civ.
App.--Houston [14th Dist.] 1979, no writ).
12. After consolidation here, the two cases retained their original cause numbers,
but one judgment was issued disposing of both cases, and their treatment
indicates that this was a true consolidation.
13. Texas Rule of Civil Procedure 749 derives from 1925 Revised Statutes article
3987: "Either party may appeal from a final judgment in such case, to the
county court of the county in which the judgment is rendered . . . ." Revised
Statutes, 39th Leg., R.S., § 1, art. 3987, 1925 Tex. Rev. Civ. Stat. 2, 1082. The
1925 Revised Statutes used the term "county court" to refer both to the
constitutional county court and to the statutory county court. See generally
Revised Statutes, 39th Leg., R.S., § 1, arts. 1927-1970, 1925 Tex. Rev. Civ.
Stat. 2, 532-539 (title 41, Courts-County, defining duties and powers of
county court). Rule 749 thus allows an appeal to either the constitutional
county court or the statutory county court.
14. We distinguish the authority on which Nguyen relies for the contrary
proposition. In West Anderson Plaza v. Feyznia, the county court considered
the merits of a DTPA counter-claim asserted on appeal in a forcible-detainer
action without mentioning its lack of jurisdiction over that claim. See id., 876
S.W.2d 528, 531-36 (Tex. App.--Austin 1994, no writ). Neither did the
Feyznia court address the limited jurisdiction applicable to forcible-detainer
suits. See id., passim. The same is true of the court in Anarkali Enterprises,
Inc. v. Riverside Drive Enterprises, Inc., 802 S.W.2d 25, 27-28 (Tex.
App.--Fort Worth 1990, no writ). Simply put, the Anarkali Enterprises, Inc.
and Feyznia courts did not discuss the jurisdictional issue before us, whereas
the cases on which we have relied in this paragraph did so expressly.
15. See Carlson's Hill Country Beverage, L.C., 957 S.W.2d at 954; cf. Haginas v.
Malbis Mem'l Found., 163 Tex. 274, 278, 354 S.W.2d 368, 371 (1962). 
Compare Ward v. Malone, 115 S.W.3d 267, 269 (Tex. App.--Corpus Christi
2003, pet. denied) (indicating that, generally, county court's appellate
jurisdiction is confined to limits of justice court and that county court has no
jurisdiction over forcible-detainer appeal unless justice court did); Tex. Gov't
Code Ann. § 27.031(a)(1) (Vernon 2004) (setting amount-in-controversy civil
jurisdiction of justice courts at $5,000 maximum, excluding interest).
16. Because there was no subject-matter jurisdiction over any counter-claims or
third-party claims that Nguyen asserted in the forcible-detainer suit, before
consolidation, against HKDI or Duong, it is immaterial whether the county
civil court at law in that suit had personal jurisdiction over Duong--which
Duong argues was lacking over him at that time.
17. Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex.
1990).
18. Nguyen reasserted her third-party claim for tortious interference against Duong
after consolidation, with leave of the court. We assume without deciding that
the reassertion of this cause of action after consolidation, albeit styled as a
"third-party" claim against unserved third-party defendant Duong in the
forcible-detainer suit, was the equivalent of having asserted the cause of action
as a "claim" against Duong in his capacity as a defendant post-consolidation. 
See Tex. R. Civ. P. 71 ("When a party has mistakenly designated any plea or
pleading, the court, if justice so requires, shall treat the plea or pleading as if
it had been properly designated."); Heard, 603 S.W.2d at 833 ("We look to the
substance of a plea for relief to determine the nature of the pleading, not
merely at the form of title given to it."). That is, we assume without deciding
that Nguyen invoked the original jurisdiction of the county civil court at law
when she reasserted this claim against Duong after consolidation.
19. Compare Vickrey v. Symes, 527 S.W.2d 836, 837 (Tex. App.--Tyler 1975, no
writ) (holding, in appeal from forcible-detainer judgment, that court of appeals
could not review propriety of special issue, which was alleged to have
constituted impermissible general charge on title), with Kaminetzki v. Doshos
I, Ltd., No. 14-03-00567-CV, 2004 WL 1116960, at *4 (Tex. App.--Houston
[14th Dist.] May 20, 2004, no pet.) (memo. op.) (holding, in appeal from
forcible-detainer judgment, that court of appeals could consider challenge that
county court judge was automatically disqualified upon party's objection).
20. Appeal was taken to the district court because the county court of Nueces
County had no civil jurisdiction at that time. Cahill v. Tex.-Mex. Ry. Co., 40
S.W. 871, 871 (Tex. Civ. App.--San Antonio 1897, writ dism'd).
21. We distinguish the authority on which Nguyen relies for the contrary position. 
In Knight v. K & K Properties, Inc., in rejecting a tenant's argument that the
landlord could not collect rents in a forcible-detainer suit because the tenant
had relinquished possession of the property by the time of appeal, the court
noted in dictum that the tenant's objection would have been obviated had the
landlord sued for rent in county court and then moved to consolidate that suit
with the forcible-detainer appeal. See id., 589 S.W.2d 860, 862 (Tex. Civ.
App.--Fort Worth 1979, no writ). We note that rents may be sought in a
forcible-detainer suit; that is not true of Nguyen's claims. See Tex. R. Civ. P.
738, 752. In French v. Moore and Green v. Canon, the courts
considered--without discussing the propriety of consolidation or the trial
court's jurisdiction to do so--appeals in cases in which a county civil court at
law had consolidated a forcible-detainer appeal with another suit in which it
was exercising original jurisdiction. See French, 169 S.W.3d 1, 17 (Tex.
App.--Houston [1st Dist.] 2004, no pet.); Green, 33 S.W.3d 855, 859 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied). Because consolidation of a
forcible-detainer appeal with an original-jurisdiction suit is error, but not
jurisdictional error, the French and Green courts rightly did not discuss the
issue before them, and the holdings of French and Green are not instructive in
this case. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) ("We have
held repeatedly that the courts of appeals may not reverse the judgment of a
trial court for a reason not raised in a point of error."). For this reason, we
decline to read French and Green as does Nguyen--especially when the only
Texas appellate court (ours, in Cahill) expressly addressing the issue has held
contrary to Nguyen's reading.
22. See Allison v. Ark. La. Gas Co., 624 S.W.2d 566, 568 (Tex. 1981).
23. HKDI and Nguyen do not argue that they were harmed by what was, in effect,
the total denial of a decision on the right to immediate possession under their
forcible-detainer pleadings because (1) they might have prevailed under those
pleadings and (2) they could thus have been entitled to recover their costs for
Nguyen's withholding possession of the premises during the pendency of the
forcible-detainer appeal. See Tex. R. Civ. P. 752. Accordingly, we do not
consider this aspect in our mootness analysis.
24. Because we resolve in HKDI and Duong's favor their legal-sufficiency
challenges to many of the claims and damages that the trial court allowed by
trial amendment, we need not determine whether the trial court erred in
allowing those trial amendments.
25. HKDI and Duong preserved this complaint by moving for directed verdict and
by objecting to the submission of jury question number 6, concerning tortious
interference, on this ground. See Cecil v. Smith, 804 S.W.2d 509, 510-11
(Tex. 1994).
26. HKDI and Duong preserved this challenge by the implicit overruling of their
objections to Nguyen's proposed judgment and their own motion for entry of
judgment, which asserted this argument and which we have construed as pre-judgment motions for JNOV or to disregard jury findings. See Tex. R. App. P.
33.1(a)(2)(A); Lenz v. Lenz, 79 S.W.3d 10, 13 (Tex. 2002) (holding that
appellant preserved complaint raised in pre-judgment JNOV because trial court
implicitly ruled on JNOV motion by virtue of substance of its judgment that
was later rendered); First Nat'l Indem. Co. v. First Bank & Trust of Groves,
Tex., 753 S.W.2d 405, 407 (Tex. App.--Beaumont 1998, no pet.). 
Additionally, HKDI and Duong moved for directed verdict on the civil-conspiracy claim because there was no evidence of "any wrongful or unlawful
act." See Cecil, 804 S.W.2d at 510-11.
27. Nguyen asserts that the evidence showed that "the conspiracy included more
participants than simply Tu and Duong." However, the jury was asked to
determine only whether HKDI, Tu, and Duong were co-conspirators, not any
other person. An element of a civil conspiracy claim is two or more persons
participate, which means that it was Nguyen's burden to request determinations
of who the participants were. See Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex.
2005). In any event, "an object to be accomplished" is also an element of the
claim, and the only "object" on which Nguyen sought a jury determination was
Duong's tortious interference--one for which we have already held that
Nguyen adduced legally insufficient evidence. See id.
28. HKDI and Duong preserved this challenge by the implicit overruling of their
objection to Nguyen's proposed judgment and their own motion for entry of
judgment, which asserted that the court "should not award judgment to
[Nguyen]" on jury question 6, concerning liability for tortious interference. 
(Emphasis added.) See Tex. R. App. P. 33.1(a)(2)(A); Lenz, 79 S.W.3d at 13;
First Nat'l Indem. Co., 753 S.W.2d at 407. We deem a request that the court
not "award judgment" on a liability question to be broad enough to include a
request to disregard any damages finding that is dependant on that liability
question.
29. HKDI and Duong preserved this challenged by the implicit overruling of their
objections to Nguyen's motion for entry of judgment and of their motion for
judgment, which asserted that no evidence supported this damages finding. 
See Tex. R. App. P. 33.1(a)(2)(A); Lenz, 79 S.W.3d at 13; First Nat'l Indem.
Co., 753 S.W.2d at 407.
30. HKDI and Duong preserved this challenge by objecting to the submission of
jury question 7 on this basis. See Cecil, 804 S.W.2d at 510-11.
31. In any event, we have already held that legally insufficient evidence supports
the jury's civil-conspiracy findings against HKDI and Duong.
32. HKDI and Duong sufficiently preserved this challenge by the implicit
overruling of their objection to Nguyen's proposed judgment and their own
motion for entry of judgment, which asserted (1) that the jury's findings of
malice against Duong "improperly rest[ed] on the conspiracy finding, in that
no finding of damages exists as to the conspiracy claim"; (2) that the jury's
award of punitive damages against HKDI and Duong "does not rest on a
finding of actual damages"; and (3) that "no evidence supports the jury's
finding of punitive damages" against HKDI and Duong. See Tex. R. App. P.
33.1(a)(2)(A); Lenz, 79 S.W.3d at 13; First Nat'l Indem. Co., 753 S.W.2d at
407. Although these objections differ slightly from that raised on appeal, they
together sufficiently advised the court that submission of the punitive-damages
issue was improper because of the failure of a predicate concerning actual
damages. See Tex. R. App. P. 33.1(a)(1)(A) (providing that, to preserve error,
motion must state grounds "with sufficient specificity to make the trial court
aware of the complaint.").
33. HKDI and Duong preserved this challenge by objecting to the submission of
jury question 16 on this basis. See Cecil, 804 S.W.2d at 510-11.
34. The malice question supporting the award of punitive damages was predicated
on a finding that Duong was liable for civil conspiracy only. The only actual
damages awarded were for Duong's tortious interference, not civil conspiracy. 
However, his liability for civil conspiracy was implicitly predicated on his
liability for tortious interference. Because HKDI and Duong do not argue
otherwise on appeal, we assume without deciding the award of actual damages
against Duong for tortious interference could, in the abstract, support an award
of punitive damages against Duong under this charge.
35. HKDI and Duong also argue that the trial court erred in rendering judgment for
the attorney's fees that the jury found because they could not be supported by
Property Code section 24.006(c), (36)
36. - 
 
 § 
 
 
37. Although HKDI and Duong did not state their challenge (2) in the trial court
in the exact terms stated on appeal, they did assert below that Nguyen "cannot
recover legal fees based on her declaratory judgment action," which we deem
sufficiently to have preserved their appellate argument.
38. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997)
; Tex. Prop.
Code Ann. § 24.006 (Vernon 2000); Tex. R. Civ. P. 752.
39. See Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 311 (Tex. 2006)
("Absent a contract or statute, trial courts do not have inherent authority to
require a losing party to pay the prevailing party's fees.").
40. In a few paragraphs in their opening and reply briefs, HKDI and Duong
mention that the lease agreement's anti-assignment clause "nullifies" or
"violates" the lease assignment as a matter of law, even if the assignment
occurs "by operation of law," which might be a reference to the court's order
to sign the lease assignment. The other times that they mention the anti-assignment clause, they do so in support of their jurisdictional or no-evidence
arguments, not as a challenge to the jury's duress finding. These brief
statements do not amount to appellate challenges to the jury's duress finding. 
Additionally, as mentioned above, their issue two is phrased in terms of
whether the trial court erred in allowing Nguyen belatedly to assert waiver and
estoppel, which argument could not apply to duress, and HKDI and Duong
expressly state that they "ha[ve] never challenged the merits of the issue of
possession," to which the merits of the duress defense relates.
41. See Tex. R. Civ. P. 94 (indicating that estoppel and duress are affirmative
defenses); In re S.A.P., 156 S.W.3d 574, 576 (Tex. 2005) (quoting rule 94
concerning estoppel's being avoidance or affirmative defense); In re Epic
Holdings, Inc., 985 S.W.2d 41, 57 (Tex. 1998) ("Waiver is an affirmative
defense"); Hardin v. Hardin, 597 S.W.2d 347, 348 (Tex. 1980) (describing
duress as affirmative defense).
42. "An affirmative defense 'seeks to establish an independent reason that the
plaintiff should not recover' and is 'thus [a defense] of avoidance, rather than
a defense in denial'; that is, it is a defense of confession and avoidance." 
Hamm v. Millennium Income Fund, L.L.C., 178 S.W.3d 256, 268 (Tex.
App.--Houston [1st Dist.] 2005, pet. denied) (quoting In re C.M., 996 S.W.2d
269, 270 (Tex. App.--Houston [1st Dist.] 1999, no pet.) and Great Am. Prods.
v. Permabond Int'l, 94 S.W.3d 675, 683 (Tex. App.--Austin 2002, pet.
denied)).